OPINION
{¶ 1} Plaintiff-Appellant, Berneice Pfautz, executor of the estate of Olin Pfautz, deceased, appeals the judgment of the Marion County Court of Common Pleas affirming the administrative appeal decision issued by the Defendant-Appellee, Ohio Department of Jobs and Family Services (hereinafter referred to as "ODJFS"), and finding that Berneice's homestead property was a non-exempt, countable resource for purposes of Medicaid eligibility. On appeal, Berneice asserts that ODJFS was prohibited from counting the homestead property as a non-exempt, countable resource and that ODJFS' interpretation of its rules does not bear a rational relationship to a legitimate state purpose. Finding that the homestead property remained an exempt, non-countable resource, we reverse the judgment of the trial court and remand for further proceedings.
 {¶ 2} The following facts are undisputed.
 {¶ 3} Berneice owned the property located at 1177 Woodbine Avenue, Marion, Ohio, (hereinafter referred to as "the homestead property"), in which she *Page 3 
resided with her spouse, Olin Pfautz. Berneice has resided at the homestead property at all times pertinent to this case.
 {¶ 4} In August 2001, Berneice created a revocable living trust and transferred her assets into the trust to avoid probate. Notably, Berneice transferred the homestead property, by way of quitclaim deed, to herself and Olin as the co-trustees of the trust. As settler and co-trustee of the trust, Berneice retained total control of the trust corpus and designated herself as the sole beneficiary.[1]
 {¶ 5} In March 2005, Olin became ill, was hospitalized, and was later transferred to a nursing home facility.
 {¶ 6} In August 2005, Berneice submitted an application on Olin's behalf to the Marion County Department of Job and Family Services (hereinafter referred to as "MCDJFS") for Medicaid coverage of the nursing home expenses.
 {¶ 7} In January 2006, MCDJFS conducted a resource assessment, determined that Olin's countable resources exceeded the Medicaid eligibility resource limits, and denied the Medicaid application. In doing so, MCDJFS considered the homestead property in the trust to be a countable resource valued at $41,770. Subsequently, Olin requested that ODJFS conduct a state hearing of MCDJFS' decision under R.C. 5101.35(B). *Page 4 
 {¶ 8} On February 9, 2006, a state hearing officer affirmed MCDJFS' denial of Olin's Medicaid application. Thereafter, Olin administratively appealed the State Hearing Decision pursuant to R.C. 5101.35(C). On February 27, 2006, ODJFS affirmed the State Hearing decision.
 {¶ 9} In March 2006, Olin appealed the Administrative Appeal Decision to the trial court pursuant to R.C. 119.12 and R.C. 5101.35(E).
 {¶ 10} In August 2006, Olin passed away.
 {¶ 11} In October 2006, Berneice, as the executor of Olin's estate, moved to be substituted as the appellant, which the trial court granted.
 {¶ 12} In November 2006, the trial court affirmed the Administrative Appeal Decision, finding that the treatment of exemptions under Ohio Adm. Code 5101:1-39-27.1(C)(3), governing trusts, controlled over the general exemption rule in Ohio Adm. Code 5101:1-39-26(A)(4) because the trust rule was more specific; that the homestead property lost its exemption from being included in the Medicaid resource assessment when it was transferred into a revocable living trust; that ODJFS was not prohibited by its own rules from treating homestead property as a non-exempt countable resource once the homestead property has been transferred into a revocable living trust; that ODJFS' interpretation of the relevant Ohio Adm. Code rules comports with Title XIX of the Social Security Act; and, that the differential treatment of Medicaid applicants who transfer their *Page 5 
homestead property into a revocable living trust versus those who do not satisfied the rational basis test.
 {¶ 13} It is from this judgment that Berneice appeals, presenting the following assignments of error for our review.
 Assignment of Error No. I THE AGENCY WAS PROHIBITED FROM COUNTING THE HOMESTEAD PROPERTY AS A NON-EXEMPT, COUNTABLE RESOURCE.
 Assignment of Error No. II THE AGENCY IS PROHIBITED FROM INTERPRETING ITS RULES SO AS TO REQUIRE DIFFERENTIAL TREATMENT OF MEDICAID APPLICANTS WITHOUT A RATIONAL RELATIONSHIP TO A LEGITIMATE STATE PURPOSE.
 {¶ 14} The following standard of review applies throughout. Additionally, we note that Berneice raises issues of first impression for this Court and, it appears, for Ohio. Accordingly, we also provide a thorough discussion of the Medicaid program and the provisions applicable to this case.
 Standard of Review {¶ 15} R.C. 5101.35 governs judicial review of administrative appeal decisions issued by ODJFS and authorizes appellants who disagree with an administrative appeal decision of the director of ODJFS to appeal to the court of common pleas of the county in which they reside pursuant to R.C. 119.12. R.C. 5101.35(E). The trial court must then conduct a hearing, consider the entire *Page 6 
record, and must affirm an agency's decision where it is supported by "reliable, probative, and substantial evidence and is in accordance with law." R.C. 119.12. Thus, "`an agency's findings of fact are presumed to be correct and must be deferred to by a reviewing court unless that court determines that the agency's findings are internally inconsistent * * * or are otherwise unsupportable.'" VFW Post 8586 v. Ohio LiquorControl Comm., 83 Ohio St.3d 79, 82, 1998-Ohio-181, quoting OhioHistorical Soc. v. State Emp. Relations Bd. (1993), 66 Ohio St.3d 466,471, 1993-Ohio-182.
 {¶ 16} An appellate court's review of an administrative decision is more limited than that of a trial court. Nye v. Ohio Bd. of Examiners ofArchitects, 165 Ohio App.3d 502, 2006-Ohio-948, ¶ 11, citing Pons v.Ohio State Med. Bd, 66 Ohio St.3d 619, 621, 1992-Ohio-122. An appellate court must determine only whether the trial court abused its discretion. Id. An abuse of discretion "connotes more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary, or unconscionable." Blakemore v. Blakemore (1983),5 Ohio St.3d 217, 219. Absent an abuse of discretion, a reviewing court may not simply substitute its judgment for that of an administrative agency or the trial court. Nye, 165 Ohio App.3d at ¶ 11, citing Pons, supra. However, an appellate court does have plenary review of purely legal questions. Big Bob's, Inc. v. Ohio *Page 7 Liquor Control Comm., 151 Ohio App.3d 498, 2003-Ohio-418, ¶ 15
(citations omitted).
 Overview of Medicaid and Applicable Provisions {¶ 17} Ohio participates in the Federal Medicaid Program established by Title XIX of the Social Security Act, also known as the Medicaid Act,42 U.S.C. 1396 et seq. Under the program, participating States receive federal funding for reimbursement of certain medical treatment costs for low-income individuals who meet all of the eligibility criteria and fall into at least one of the following categories: aged 65 or older, blind, disabled, pregnant, a child under age 21, or a member of a family with dependent children. Martin v. Ohio Dept. of Human Serv. (1997),122 Ohio App.3d 679, 681, citing Harris v. McRae (1980), 448 U.S. 297, 301; see, also, R.C. 5111.01(A) and Ohio Adm. Code 5101:1-37-01(A). As a condition for federal funding, each participating state must develop a plan setting forth reasonable standards to determine eligibility for, and the extent of, medical assistance under the program in accordance with the requirements imposed by the Medicaid Act and the Secretary of the United States Department of Health and Human Services. 42 U.S.C. 1396a(a)(17). Additionally, participating states are required to comply with the provisions of 42 U.S.C. 1396p with respect to transfers of assets and treatment of certain trusts. 42 U.S.C. 1396a(a)(18). *Page 8 
 {¶ 18} In Ohio, ODJFS supervises the administration of Ohio's Medicaid program, see R.C. 5111.01 and Ohio Adm. Code 5101:1-37-01(A), and has promulgated rules for doing so under the Ohio Administrative Code, which closely mirrors federal Medicaid law. Ohio Adm. Code 5101:1-39 et seq. governs Medicaid eligibility for low-income individuals who, like Olin, fall into the aged 65 or older category.
 {¶ 19} Upon receipt of an application for Medicaid, ODJFS must conduct a resource assessment to determine whether the applicant's aggregate resources exceed the eligible "resource limitation," which is the "maximum combined value of all resources an applicant/recipient can have an ownership interest in and still qualify for Medicaid." Ohio Adm. Code5101:1-39-05(A)(9). For an individual, the resource limitation is $1500, whereas for a couple, whether both are eligible or one is ineligible, the resource limitation is $2250. Ohio Adm. Code 5101:1-39-05(A)(9). Resources are defined as "cash, personal property, and real property that an individual and/or spouse has an ownership interest in, has the legal ability to access in order to convert to cash (if not already cash), and is not legally prohibited from using for support and maintenance." Ohio Adm. Code 5101:1-39-05(A)(8).
 {¶ 20} However, certain types of property are generally exempt from being considered resources. See Ohio Adm. Code 5101:1-39-26. Thus, when *Page 9 
conducting a resource assessment, ODJFS may only apply countable resources, which are "those resources remaining after all exemptions have been applied," toward the resource limitation. Ohio Adm. Code5101:1-39-05(A)(2). The "home and the land associated with the home that is lived in and is used as a home by the individual [or] the couple" is one such exemption. Ohio Adm. Code 5101:1-39-26(A)(4).
 {¶ 21} Under former Ohio Adm. Code 5101:1-39-31.1(A), in order for the value of the home to be exempt, the home must have been the applicant's principal place of residence. Likewise, under former Ohio Adm. Code5101:1-39-31.2, where an applicant resided in a medical institution for six months or longer, the home continued to be considered his or her principal place of residence if the spouse resided in the home. Both Ohio Adm. Code 5101:1-39-31.1 and 5101:1-39-31.2 have since been repealed and replaced by a new provision, Ohio Adm. Code5101:1-39-31(C)(1)(a)-(b), effective October 1, 2006, which now requires in part that, for the value of the home to be exempt, the home must be the individual's or the individual's spouse's principal place of residence and the "deed to the home must be in the individual's or individual's spouse['s] name." However, we apply Ohio Adm. Code5101:1-39-31.1 and 5101:1-39-31.2 given they were still effective at all times relevant to this appeal. *Page 10 
 {¶ 22} In addition to the general provisions above, Ohio Adm. Code 5101:1-39 et seq. also contains specific provisions governing how resources should be assessed in particular situations. Three such provisions are relevant to the case sub judice: Ohio Adm. Code5101:1-39-35, which governs resource assessments conducted for couples, like the Pfautz's, who were separated by institutionalization[2] on or after January 1, 1990; Ohio Adm. Code 5101:1-39-07, which governs transfers of assets; and, Ohio Adm. Code 5101:1-39-27.1, which governs the treatment of certain types of trusts.
 {¶ 23} Under Ohio Adm. Code 5101:1-39-35(B), where an institutionalized individual has applied for Medicaid, the "resources of both the institutionalized spouse and the community spouse must be assessed to determine the couple's total countable resources" for the relevant time period. In doing so, the homestead property remains exempt for institutionalized individuals. Ohio Adm. Code 5101:1-39-35(B)(1).
 {¶ 24} Regarding transfers of assets and resources, under Ohio Adm. Code 5101:1-39-07, certain transfers of resources are deemed improper and render an applicant ineligible for Medicaid. Notably, the transfer of assets provision includes its own definition of "resources", which provides that the term "resources" has the same definition as that given under Ohio Adm. Code 5101:1- *Page 11 
39-05, "except that the home is not excluded for institutionalized individuals." Ohio Adm. Code 5101:1-39-07(A)(8). Thus, where the transfer of assets provision applies, institutionalized individuals lose the homestead property exemption if they transfer the home in the specified time period prior to or after applying for Medicaid.
 {¶ 25} The trust provision,[3] Ohio Adm. Code 5101.1-39-27.1, governs Medicaid trusts and provides that, if the applicant is a beneficiary of a trust, the agency must first determine under which of five categories the trust falls.[4] Once the trust category is determined, the rules pertaining to that category must be applied, which "will result in a determination that the trust or a portion of the trust is a countable resource, countable income, both income and a resource, or not countable as income or a resource." Ohio Adm. Code 5101.1-39-27.1(A)(4).[5] The rule applicable to a category two, self-settled revocable trust provides that "the corpus of the trust shall be considered a resource available to the applicant."[6] Ohio Adm. Code 5101.1-39-27.1(C)(2)(b)(i) (hereinafter referred to as "the trust rule"). The trust rule also specifies that certain types of payments from the trust *Page 12 
are to be considered unearned income, while other types of payments from the trust are to be considered improper transfers. Ohio Adm. Code5101:1-39-27.1(C)(2)(b)(ii)-(iii). However, unlike the transfer of assets provision, the trust provision neither provides a separate definition of resources nor provides that institutionalized individuals lose the homestead exemption.
 Assignment of Error No. I {¶ 26} In her first assignment of error, Berneice asserts that ODJFS was prohibited from counting the homestead property as a non-exempt, countable resource. Specifically, Berneice contends that the homestead property did not lose its exemption when placed in the trust because, while the homestead property is an available resource, it is not a countable resource under Ohio's trust rule; that the homestead property exemption was adopted after the trust rule and was intended to prevail over the trust rule; and, that ODJFS' inclusion of the homestead property as a countable resource is contrary to the trust rule and federal law.
 {¶ 27} When interpreting a statute, the judiciary's primary purpose must be to give effect to the intention of the legislature. In reMcClanahan, 5th Dist. No. 2004AP010004, 2004-Ohio-4113, at ¶ 16, citingHenry v. Central National Bank (1968), 16 Ohio St.2d 16, 20. In doing so, the court must first look to the language of the statute itself to determine the legislative intent, McClanahan, 2004-Ohio-4113, at ¶ 16, citing Provident Bank v. Wood (1973), 36 Ohio St.2d 101, 105, and *Page 13 
the words must be given their usual, normal, and/or customary meanings.Proctor v. Kardassilaris, 115 Ohio St.3d 71, 2007-Ohio-4838, at ¶ 12
(citations omitted); R.C. 1.42. Additionally, it is the duty of the courts to give effect to the words used, not to delete words used or to insert words not used. McClanahan, 2004-Ohio-4113, at ¶ 16, citingColumbus-Suburban Coach Lines v. Public Utility Comm. (1969),20 Ohio St.2d 125, 127.
 {¶ 28} It is axiomatic that if the language of the statute is plain and unambiguous, and conveys a clear and definite meaning, there is no need for a court to apply further rules of statutory interpretation.State v. Siferd, 151 Ohio App.3d 103, 117, 2002-Ohio-6801, citingState ex rel Jones v. Conrad (2001), 92 Ohio St.3d 389, 392 (citations omitted). "`In such a case, we do not resort to rules of interpretation in an attempt to discern what the General Assembly could have conclusively meant or intended in * * * a particular statute — we rely only on what the General Assembly has actually said.'" Siferd,151 Ohio App.3d at 117, quoting Muenchenbach v. Preble Cty. (2001),91 Ohio St.3d 141, 149.
 {¶ 29} "`Where a statute is found to be subject to various interpretations, however, a court called upon to interpret its provisions may invoke rules of statutory construction in order to arrive at the legislative intent.'" Siferd, 151 Ohio App.3d at 117, quotingMeeks v. Papadopulos (1980), 62 Ohio St.2d 187, 190. *Page 14 
 {¶ 30} These maxims apply equally to administrative regulations.Clark v. State Bd. of Registration for Professional Engineers Surveyors (1997), 121 Ohio App.3d 278, 284, citing State ex rel.Brilliant Elec. Sign Co. v. Indus. Comm. (1979), 57 Ohio St.2d 51, 54. However, if a court determines that an administrative regulation is ambiguous, it must give deference to the agency's interpretation of its own regulation. Cincinnati City School Dist. v. State Bd. of Edn.
(1996), 113 Ohio App.3d 305, 312 (citations omitted); Cuyahoga CountyBd. of Comm'rs v. Ford (1987), 35 Ohio App.3d 88, 92 (citations omitted).
 {¶ 31} Here, Berneice first argues that, under the plain language of the trust rule, the homestead property becomes an available resource upon placement into a category two trust, but it does not become a countable resource.[7] Upon looking first to the plain language of the trust rule, we find that the language clearly and unambiguously retains the homestead property exemption. The trust rule makes no mention of the homestead property exemption or any other exemption. Indeed, unlike the transfer of assets provision, the trust rule neither separately defines "resources" nor states that institutionalized individuals lose the homestead property exemption upon transferring the home into a trust. If the drafters of the trust rule had intended to revoke the homestead property exemption for *Page 15 
institutionalized individuals, they could easily have done so by inserting the same definition of "resources" that they explicitly provided in the transfer of assets provision. The drafters did not do so and we decline to find that, while the drafters simply and explicitly revoked the homestead property exemption in the transfer of assets provision, they only implicitly did so in the trust rule, despite the lack of any mention of the homestead property exemption. Thus, although our decision is limited in scope given the new requirements enacted under Ohio Adm. Code 5101:1-39-31(C)(1), we find that the general definition of "resources" under Ohio Adm. Code 5101:1-39-05, as well as the homestead property exemption under Ohio Adm. Code5101:1-39-35(B)(1), still apply in the context of the trust rule in this case. Accordingly, the requirement that the corpus of a self-settled revocable trust "shall be available as a resource" has no effect on the homestead property at issue because, under the homestead property exemption, the homestead property of institutionalized individuals is excluded from even being considered a resource. Ohio Adm. Code5101:1-39-35(B)(1).
 {¶ 32} Even if the requirement that the trust corpus "shall be available as a resource" somehow meant that the homestead property could be considered as a resource, our outcome would be the same. Ohio Adm. Code 5101:1-39-27.1(C)(2)(b)(i) provides that the trust corpus shall be considered an available *Page 16 
resource, not a countable resource. Although ODJFS argues that "available" and "countable" are synonymous and interchangeable, the plain language of the trust provision indicates otherwise by suggesting a two-step process. The trust provision states that, upon application of the pertinent trust category rule — here, that the corpus shall be considered an available resource — then the determination of whether the resource "is a countable resource, countable income, both income and a resource, or not countable as income or a resource" will be made. We must give effect to the words used by the drafters. McClanahan,2004-Ohio-4113, at ¶ 16, citing Columbus-Suburban Coach Lines,20 Ohio St.2d at 127. If the drafters intended that the trust corpus be considered a countable resource, they could have done so, particularly given they specifically defined "countable resources" in Ohio Adm. Code5101:1-39-05. Instead, the drafters provided that the trust corpus would be considered an "available resource"; that certain types of payments from the trust would be considered unearned income while other types of payments from the trust would be considered improper transfers; and, that application of the trust rule would result in a determination that the resources were countable resources, countable income, both income and resources, or not countable as income or as a resource. Thus, even if the Pfautz's home is an available resource, the determination whether it is a countable resource must then be made, and countable resources "are those resources remaining after all exemptions have been *Page 17 
applied." Ohio Adm. Code 5101:1-39-05(A)(2). After applying the homestead property exemption, the Pfautz's home is not a countable resource for purposes of Medicaid eligibility. Therefore, we find that the trial court abused its discretion in finding that the homestead property exemption no longer applied once Berneice transferred the home into the trust.[8]
 {¶ 33} Furthermore, the fact that the drafters have since amended the administrative code to require that title to the home be in the individual's or the individual's spouse's name demonstrates that, before the amendment, the homestead exemption continued to apply to individuals who transferred title to their homes but still considered the home to be their principal place of residence.
 {¶ 34} Based on our finding that the plain language of the trust rule is clear and unambiguous, we need not address Berneice's remaining arguments.
 {¶ 35} Accordingly, we sustain Berneice's first assignment of error.
 Assignment of Error No. II {¶ 36} In her second assignment of error, Berneice asserts that ODJFS is prohibited from interpreting its rules so as to require differential treatment of Medicaid applicants without a rational relationship to a legitimate state purpose. *Page 18 
 {¶ 37} Our disposition of Berneice's first assignment of error renders her second assignment of error moot, and we decline to address it. See App.R. 12(A)(1)(c).
 {¶ 38} Having found error prejudicial to the appellant herein, in the particulars assigned and argued in her first assignment of error, we reverse the judgment of the trial court and remand for further proceedings consistent with this opinion.
Judgment reversed and cause remanded.
 PRESTON and WILLAMOWSKI, JJ., concur.
[1] Berneice also designated two successor trustees and seven residual beneficiaries to the trust.
[2] "Institutionalization" describes an individual who receives long term care services in a long term care facility, such as a nursing home, for thirty consecutive days. Ohio Adm. Code. 5101:1-39-35(A).
[3] The trust rule is also codified in R.C. 5111.151 and is substantially identical to Ohio Adm. Code 5101.1-39-27.1.
[4] "Applicant" is defined under the trust rule as an "individual who applies for * * * medicaid benefits or the spouse of the individual." Ohio Adm. Code 5101:1-39-27.1(B)(7). Thus, both Olin and Berneice are considered applicants for purposes of the trust rule.
[5] Also, certain types of trusts, none of which are implicated here, are exempt from being counted as a resource. Ohio Adm. Code5101:1-39-27.1(C)(3).
[6] The parties do not dispute that the trust Berneice established is a category two, self-settled revocable trust under Ohio Adm. Code5101:1-39-27.1(C)(2).
[7] We note that, under both federal and Ohio Medicaid law, a transfer of an asset into a trust triggers both the transfer of assets provision and the trust provision. In such a situation, the trust provisions take precedent over the transfer provisions because the trust provisions are "more specific and detailed in their requirements for dealing with funds placed in a trust." State Medicaid Manual, § 3259.6(G). Accordingly, we only apply the trust provision in this case.
[8] Again, we note that our finding is limited in scope in light of the new requirement that title to the home be in the individual's or the individual's spouse's name for the value of the home to be exempt. *Page 1