[Cite as *Estate of Gsellman v. Ohio Dept. of Job & Family Servs.*, 2012-Ohio-1620.]

| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF SUMMIT | ) | |

ELMA GSELLMAN

    Appellant

    v.

OHIO DEPARTMENT OF JOB &
FAMILY SERVICES, et al.

    Appellee

C.A. No.     25954

APPEAL FROM JUDGMENT
ENTERED IN THE
COURT OF COMMON PLEAS
COUNTY OF SUMMIT, OHIO
CASE No.    CV 2010 03 1541

DECISION AND JOURNAL ENTRY

Dated: April 11, 2012

DICKINSON, Judge.

INTRODUCTION

{¶1} The Summit County Department of Job and Family Services denied Elma Gsellman's application for Medicaid nursing home benefits because it determined that she had more than $1500 in resources. Ms. Gsellman requested a hearing by the Ohio Department of Job and Family Services, but the hearing officer and a panel of administrative appeals officers upheld the decision. She then appealed to the Summit County Common Pleas Court, which affirmed the decision. Her estate has appealed to this Court, arguing that the state job and family services department failed to properly certify the record to the common pleas court, that Ms. Gsellman was not provided adequate notice and opportunity to be heard in the administrative proceedings, that the common pleas court incorrectly concluded that the assets in a trust that Ms. Gsellman created could be counted toward the resource limit, and that the common pleas court incorrectly dismissed the county job and family services department from the appeal. We affirm because the

estate has not shown that Ms. Gsellman was prejudiced by the improper certification, Ms. Gsellman received adequate information from the county job and family services department about the reason for its decision, the county job and family services department correctly determined that Ms. Gsellman's resources exceeded the $1500 limit, and, even if the common pleas court incorrectly dismissed the county job and family services department, the error was harmless.

## BACKGROUND

{¶2} In 1999, Ms. Gsellman created a revocable trust and transferred "all of [her] tangible personal property, now owned or hereafter acquired," into it. She served as trustee of the trust until she became unable to handle her own affairs. In August 2007, she began residing at a skilled nursing care facility. In October 2008, her son completed an application for Medicaid benefits on her behalf through the nursing home. For some reason, the county job and family services department did not receive the application until February 2009. After reviewing the application, the county job and family services department denied it because the "value of [Ms. Gsellman's] resources exceeds program eligibility limits."

{¶3} Ms. Gsellman requested a hearing with the state job and family services department, which was held in November 2009. At the hearing, Ms. Gsellman argued that the decision she received from the county failed to adequately explain why she had been denied benefits. She, therefore, asserted that she had not been able to adequately prepare for the hearing. A case manager testified that the reason Ms. Gsellman exceeded the resource limit was because she had a bank account containing over $4000 and because the assets in her trust counted toward the limit. Ms. Gsellman argued that the department should have deemed her application to have been filed in October 2008 and that the trust should not count toward the

resource limit.  She also indicated that she would spend down her bank account to get it under $1500.  The hearing officer denied her application, however, because the aggregate value of the trust and bank account exceeded the $1500 limit.

{¶4}    Ms. Gsellman requested an administrative appeal of the hearing officer's decision, arguing that the irrevocable discretionary trust that she established more than five years before she applied for benefits is not an available asset under the Ohio Administrative Code.  She also argued that the department should have ordered her to spend down the bank account to qualify for benefits.  The administrative appeals officers who reviewed her appeal denied it, however, because they determined that the hearing officer correctly determined that the trust counted toward the resource limit.

{¶5}    Ms. Gsellman appealed the administrative decision to the common pleas court, arguing that the administrative appeals officers failed to hold a hearing or let her submit a brief, that she was not provided with a copy of the tape of the hearing before the hearing officer, that she actually submitted her application in October 2008, and that the trust should not have been counted as an asset.  Twelve days after she filed her appeal, a litigation coordinator from the state department of job and family services certified the administrative record to the common pleas court.  While the certification contained the correct caption and case number, the litigation counselor incorrectly wrote that the records submitted were a "true, accurate, and complete record of the Administrative Appeal Decision . . . of Alexis Williams, Ohio Department of Job and Family Services Appeal No. 1502528."

{¶6}    Ms. Gsellman moved to strike the certification and moved for judgment, arguing that the state department of job and family services failed to file the record as required by law.  She argued that the certification did not contain proof of service, identified the incorrect

individual, and was not filed by a registered attorney. The county job and family services department moved for dismissal of itself from the appeal, arguing that it was not a proper party. The common pleas court denied Ms. Gsellman's motions and granted the county job and family services department's motion. In November 2010, Ms. Gsellman died. The common pleas court subsequently allowed her estate to substitute itself as the appellant. In April 2011, the common pleas court affirmed the administrative appeal decision. Ms. Gsellman's Estate has appealed, assigning four errors.

### RECORD CERTIFICATION

{¶7} The Estate's first assignment of error is that the common pleas court incorrectly failed to enter judgment for it based on the improper record certification. Under Section 119.12 of the Ohio Revised Code, "[w]ithin thirty days after receipt of a notice of appeal . . . , the agency shall prepare and certify to the court a complete record of the proceedings in the case. Failure of the agency to comply within the time allowed, upon motion, shall cause the court to enter a finding in favor of the party adversely affected. Additional time, however, may be granted by the court, not to exceed thirty days, when it is shown that the agency has made substantial effort to comply."

{¶8} The Estate has argued that the state job and family services department did not comply with Section 119.12 because it certified that the complete records of "Alexis Williams" had been submitted, not Elma Gsellman. It has argued that, even though Ms. Gsellman's records were attached to the certification, no one ever certified that they were her records. The Estate has also argued that the certification did not contain proof of service, as required under Rule 5(A) of the Ohio Rules of Civil Procedure. It has further argued that the certification was

improper because the person who certified the records was not a lawyer and only lawyers may file pleadings.

{¶9}    Regarding whether the certification complied with Section 119.12, we note that, in *Arlow v. Ohio Rehabilitation Services Commission*, 24 Ohio St. 3d 153 (1986), Rudy Arlow appealed a decision by the State Personnel Board of Review to the Mahoning County Court of Common Pleas.  When the record certified by the board specified the wrong case number, Mr. Arlow moved for judgment under Section 119.12.  The Ohio Supreme Court held that Mr. Arlow was not entitled to judgment in his favor under Section 119.12 because the section only requires judgment to be entered for a party "adversely affected" by an improper certification and he had not alleged prejudice.  *Id*. at 155-56 (quoting R.C. 119.12).  Similarly, while the certification in this case contained the wrong name, the Estate has not argued that it was prejudiced by the error.  Accordingly, we conclude it was not entitled to "a finding in [its] favor" under Section 119.12.  *Id*. at 156.

{¶10}  Regarding whether the state job and family services department had to submit proof of service, the Estate has noted that, under Rule 5(A) of the Ohio Rules of Civil Procedure, "every order required by its terms to be served, every pleading subsequent to the original complaint unless the court otherwise orders because of numerous defendants, every paper relating to discovery required to be served upon a party unless the court otherwise orders, every written motion other than one which may be heard ex parte, and every written notice, appearance, demand, offer of judgment, and similar paper shall be served upon each of the parties."  The Estate has also noted that, under Civil Rule 5(D), a paper "shall not be considered until proof of service is endorsed thereon or separately filed."

{¶11} Assuming proof of service of the record was required, we note that it was required under Civil Rule 5(A) not Section 119.12. Accordingly, the state job and family services department's failure to provide proof of service did not entitle the Estate to an automatic judgment in its favor under Section 119.12. To the contrary, if the common pleas court had enforced Civil Rule 5(D), the case would have simply sat in limbo until the department filed proof of service. The Estate has not alleged that it was prejudiced by the common pleas court's consideration of the appeal before proof of service was filed. Since it was the Estate that was seeking to overturn the administrative decision, it behooved the Estate for the common pleas court to consider the merits of its appeal earlier. *Grenga v. Smith*, 11th Dist. No. 2001-T-0040, 2002 WL 409022 at *7 (Mar. 15, 2002) (concluding that technical failure to comply with Civil Rule 5(A) was harmless error).

{¶12} Although not argued by the Estate in its brief, the connection that it appears to want this Court to make is that, if the record is to "not be considered" under Civil Rule 5(D), then the state department of job and family services did not meet the 30-day certification deadline under Section 119.12. Again, however, a party is not entitled to judgment in its favor for failure to comply with Section 119.12 unless the party has been "adversely affected." R.C. 119.12. The Estate has not alleged that it was adversely affected by the fact that the record did not contain proof of service.

{¶13} Regarding the Estate's argument that a lawyer had to certify the record, it has argued that only lawyers may file pleadings. *See Maxim Enters. Inc. v. Haley*, 9th Dist. No. 24666, 2009-Ohio-5541, at ¶8 (noting that the practice of law includes the preparation of pleadings). Under Civil Rule 7(A), pleadings include "a complaint and an answer; a reply to a counterclaim . . . ; an answer to a cross-claim . . . ; a third-party complaint . . . ; and a third-party

answer . . . ." The certification of the record in an administrative appeal does not fall within any of those categories. We, therefore, reject the Estate's argument.

{¶14} The common pleas court correctly determined that the Estate was not entitled to judgment in its favor under Section 119.12 of the Ohio Revised Code. The Estate's first assignment of error is overruled.

DUE PROCESS

{¶15} The Estate's second assignment of error is that Ms. Gsellman was not provided reasonable notice and an opportunity to be heard in the administrative proceedings. It has argued that the county job and family services department should have told Ms. Gsellman before the administrative hearing the specific reasons that it had denied her application for benefits.

{¶16} Under Rule 5101:6-2-03(A) of the Ohio Administrative Code, "[if] the agency denies an application for . . . public assistance or social services, the [applicant] shall be provided prompt written notice of the decision." Among other requirements, "[t]he notice shall contain a clear and understandable statement of the action the agency has taken and the reasons for it[.]" Ohio Admin. Code 5101:6-2-03(A)(1). The notice that Ms. Gsellman received provided that the department "denied your Medicaid for the aged application" and that the reason was "value of resources exceeds program eligibility limits[.]" It also indicated that the decision was made under "Rule 5101:1-39-34[.]" Rule 5101:1-39-34(B) provides that, "[i]n determining whether an individual . . . [is] eligible with respect to resources, the two major factors considered are the appropriate resource limitation (one-thousand-five-hundred dollars . . . ) and whose resources are considered in the computation." Upon review of the notice, we conclude that it contained a "clear and understandable" explanation of the agency's decision and reasoning, as required under Rule 5101:6-2-03(A)(1).

**{¶17}** The Estate has also argued that Ms. Gsellman should have had the opportunity to confront the person who made the initial determination that her trust counted toward the $1500 resource limit. Under Rule 5101:6-6-02(B)(2)(e), an individual who requests an administrative hearing "shall have adequate opportunity to . . . [q]uestion or refute any testimony or evidence, including the opportunity to confront and cross-examine adverse witnesses." Contrary to the Estate's assertion, the case manager for Ms. Gsellman's application was at the hearing. While Ms. Gsellman's lawyer did not directly cross-examine her, he did raise issues to the hearing officer who then asked the case manager about those issues. This was consistent with the informal nature of such hearings. Ohio Admin. Code 5101:6-6-02(B)(1). Ms. Gsellman also never asked to cross-examine the case manager. Furthermore, the central issue in this case was whether the trust counts toward the $1500 resource limit under the rules established by the state job and family services department. Because the language of the trust is undisputed, this is a question of law. *Stephenson v. Stephenson*, 163 Ohio App. 3d 109, 2005-Ohio-4358, ¶ 7 (9th Dist.). Accordingly, we conclude that the Estate has failed to demonstrate that it was prejudiced by the way in which the hearing officer conducted the administrative hearing. The Estate's second assignment of error is overruled.

AVAILABLE RESOURCE

**{¶18}** The Estate's third assignment of error is that the common pleas court incorrectly concluded that the trust principal was an available asset that counted toward the $1500 resource limit. Under Section 5111.01.1(A) of the Ohio Revised Code, the General Assembly directed the state department of job and family services to "adopt rules establishing eligibility requirements for the medicaid program." The rules, however, must be consistent with state and federal law. *Id*. Exercising its authority, the state department of job and family services adopted Rule

5101:1-39-05(C)(1), which provides that "[a]n individual is ineligible for medical assistance if he or she has an ownership interest in resources with an aggregate or total countable value greater than the resource limit." The resource limit for an individual is "one thousand five hundred dollars." Ohio Admin. Code 5101:1-39-05(B)(11)(a).

**{¶19}** Rule 5101:1-39-27.1 "defines the treatment of a trust for determining eligibility for medical assistance programs." How a trust is treated depends on which of five categories it falls into. Ohio Admin. Code 5101:1-39-27.1(C). Category one is self-settled trusts established before August 11, 1993. Category two is self-settled trusts established on or after August 11, 1993. Category three is exempt trusts such as a special needs, qualifying income, or supplemental services trust. Category four is trusts established by someone else for the benefit of the individual. Category five is trusts established by will for the benefit of a surviving spouse. *Id*.

**{¶20}** In 2009, Section 5111.15.1(E)(1) of the Ohio Revised Code provided that "[a] trust . . . shall be considered a self-settled trust if all of the following apply:  (a) The trust was established on or after August 11, 1993.  (b) The trust was not established by a will.  (c) The trust was established by an applicant or recipient . . . ."  Similarly, Rule 5101:1-39-27.1(C)(2) provided that a trust was a category-two self-settled trust if "[t]he assets of the individual were used to form all or part of the corpus of the trust; . . . the trust was not established by a will; and . . . the trust was established by the individual . . . ."  Ms. Gsellman's trust was established by Ms. Gsellman, after August 11, 1993, using her assets, and not by will.  Accordingly, it was a category-two self-settled trust under the Ohio Revised and Administrative Codes.

**{¶21}** Under Rule 5101:1-39-27.1(C)(2), the treatment of a self-settled trust depends on whether it is revocable or irrevocable. The Estate argued that the trust was irrevocable and the

state job and family services department treated it as such. While the trust does not appear to contain any language making it irrevocable, the state job and family services department has not argued that it is a revocable trust. Accordingly, for purposes of this analysis, we will treat the trust as irrevocable.

{¶22} Under Rule 5101:1-39-27.1(C)(2)(c)(i), "[i]rrevocable trusts . . . are treated as follows. . . . If there are any circumstances under which payment from the trust could be made to, or for the benefit of, the individual, the portion from which payments could be made is considered a resource available to the individual." Under Article 2.2.1 of the trust, if Ms. Gsellman becomes disabled, "[t]he trustee shall pay to [her] . . . such portions of income and principal as the trustee deems necessary or advisable to provide for [her] care, education, comfort, and [her] maintenance. . . ." It is not disputed that Ms. Gsellman was disabled at the time of her application. Accordingly, upon review of the trust document, we conclude that there are circumstances under which the trust could have made payments to Ms. Gsellman. The common pleas court, therefore, correctly determined that the trust principal was a resource available to Ms. Gsellman that counted toward the $1500 resource limit. It is not disputed that the value of the trust was over $500,000 at the time of Ms. Gsellman's application. The common pleas court, therefore, correctly determined that her resources exceeded $1500.

{¶23} The Estate has argued that the court ignored the definition of "[r]esource[ ]" under Rule 5101:1-39-05(B)(10). According to the Estate, unless the trust meets the definition of resource under that rule, it does not count toward the resource limit. We reject the Estate's argument because, while Rule 5101:1-39-05(B)(10) provides a general definition of "[r]esource[ ]," Rule 5101:1-39-27.1 specifically "defines the treatment of a trust for determining [Medicaid] eligibility . . . ." *State v. Volpe*, 38 Ohio St. 3d 191, 193 (1988) ("Well-established principles of

statutory construction require that specific statutory provisions prevail over conflicting general statutes."); *Mcfee v. Nursing Care Mgmt. of Am. Inc.*, 126 Ohio St. 3d 183, 2010-Ohio-2744, at ¶ 27 (explaining that rules of statutory construction apply to administrative rules as well).

{¶24} The Estate has also argued that someone at the county job and family services department incorrectly denied her benefits because the person found she had an "open trust" with "funds . . . available." It appears to be referring to a comment entered by an employee in the county job and family services computer system that "this is an open trust and funds are available to [Ms. Gsellman] thru her trustee per 5101:1-39-27.1 (2) of the Medicaid manual for self-settled trusts." What a county job and family services employee wrote in a comment on an inter-office record system has no bearing, however, on whether Ms. Gsellman was entitled to benefits under Ohio law.

{¶25} The Estate has also argued that, under Section 5111.15.1(C) of the Ohio Revised Code, the county job and family services department was required to determine what type of trust her trust was and treat it in accordance with the appropriate statutory and administrative provisions. It has argued that the agency violated its duty because the term "open trust" does not appear in either the Revised Code or Administrative Code.

{¶26} Even if the county job and family services used incorrect terminology, it correctly determined that Ms. Gsellman's trust was a self-settled trust and that the funds in the trust were resources that were available to Ms. Gsellman under the Ohio Administrative Code. Accordingly, the Estate has not demonstrated that the agency violated Section 5111.15.1(C).

{¶27} The Estate has next argued that the hearing officer incorrectly referred to the trust's principal as "countable assets" and incorrectly made her decision on "conclusions of policy." Its argument is without merit. First, it has not pointed to any place in the hearing

officer's decision in which she used the term "countable assets." Rather, it has pointed to language from the common pleas court's summary of the hearing officer's decision. Furthermore, to the extent that the hearing officer used the term "[c]onclusions of [p]olicy," it is apparent that the hearing officer's decision was based upon the applicable statutes and rules. After all, it was the state job and family services department that adopted the rules that the state job and family services hearing officer applied in her decision and those rules were based, in part, on the department's policy decisions. R.C. 5111.01.1(A) (directing the state job and family services department to "adopt rules establishing eligibility requirements for the medicaid program.").

{¶28} The Estate has next argued that the administrative appeal officers incorrectly concluded that the degree of the trustee's discretion did not matter. According to it, because the trustee had discretion not to give Ms. Gsellman any of the trust funds after she became disabled, the trust should not have counted as an asset. Under the rules for irrevocable self-settled trusts, however, a trustee's discretion is not considered in determining whether the trust principal is an available resource. As long as payments "could be made" to the individual applying for benefits, the trust counts toward the resource limit. Ohio Admin. Code 5101:39-27.1(C)(2)(c)(i).

{¶29} The Estate has next argued that, before the trust could be analyzed under the trust rules, the trustee had to have a duty to hold, manage, retain, or administer identifiable property for the benefit of another. The rule that the Estate has cited is Rule 5101:1-39-27.1(B)(7), which refers to "[l]egal instrument or device similar to a trust." By its plain language, the provision to which the Estate has cited applies only to legal instruments or devices that are similar to a trust but are not a trust. Accordingly, we reject the Estate's argument.

{¶30} The Estate has next argued that, under the rule for irrevocable self-settled trusts, only the "portion" of the trust from which payments can be made is considered an available resource. It, however, has not pointed to any language in the trust that restricted the amount of the trust principal that could be distributed to Ms. Gsellman. In this case, the "portion" of funds available to Ms. Gsellman was the entire trust.

{¶31} The Estate has next argued that, under *Pfautz v. Ohio Department of Job & Family Services*, 3d Dist. No. 9-06-62, 2007-Ohio-6424, even if the trust principal is an available resource, it does not count toward the resource limit unless it also qualifies as a "countable resource." *Id*. at ¶ 32. In *Pfautz*, Olin Pfautz applied for benefits in August 2005. The state job and family services department amended the eligibility rules regarding trusts in October 2006. Accordingly, because it was applying a prior version of the rules, *Pfautz* is not instructive. See *id*. at ¶ 21 (noting October 2006 amendments to rules). Furthermore, the issue in that case was whether homestead property, which, under Rule 5101:01-39-26, would not count toward the resource limit if it was outside of a trust, counted toward the limit if it was part of a trust. The Third District determined that the property did not lose its exemption just because it was included in the trust. *Id*. at ¶ 32. In this case, there is no allegation that any of the property that Ms. Gsellman transferred to the trust is exempt under Rule 5101:1-39-26.

{¶32} The Estate has further argued that the trust does not count toward the resource limit under *Young v. Ohio Department of Human Services*, 76 Ohio St. 3d 547 (1996) and *Pack v. Osborn*, 117 Ohio St. 3d 14, 2008-Ohio-90. *Young*, however, involved a testamentary trust, which is treated differently under Rule 5101:1-39-27.1(C). *Pack* involved a trust established by someone else for the benefit of the applicant so it also involved different criteria. Neither case applied the rules for a category-two trust, which is the type of trust at issue in this case.

{¶33} Upon review of the record, we conclude that the common pleas court correctly determined that Ms. Gsellman's trust counted toward the $1500 Medicaid resource limit. *See Grill v. Ohio Dep't of Job & Family Servs.*, 9th Dist. No. 03CA0029-M, 2003-Ohio-5780, at ¶15-16 (providing standard of review for appeals under Section 119.12 of the Ohio Revised Code). The Estate's third assignment of error is overruled.

### DISMISSAL OF COUNTY JOB AND FAMILY SERVICES DEPARTMENT

{¶34} The Estate's fourth assignment of error is that the common pleas court incorrectly dismissed the county job and family services department, concluding that it was no longer a real party of interest. Because the Estate has failed to establish that Ms. Gsellman was entitled to Medicaid benefits, we conclude that, even if the dismissal of the county job and family services department was error, it was harmless. Civ. R. 61. The Estate's fourth assignment of error is overruled.

### CONCLUSION

{¶35} The Estate has not demonstrated that Ms. Gsellman was prejudiced by the improper record certification, Ms. Gsellman received sufficient information from the county job and family services department about the reason for the denial of her Medicaid application, the county job and family services department correctly determined that Ms. Gsellman's resources exceeded the $1500 resource limit, and, even if the common pleas court incorrectly dismissed the county job and family services department, the error was harmless. The judgment of the Summit County Common Pleas Court is affirmed.

Judgment affirmed.

—————

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

 

CLAIR E. DICKINSON
FOR THE COURT

 

BELFANCE, J.
CONCURRING IN JUDGMENT ONLY.

{¶36} I concur in the judgment of the majority.

{¶37} In 1964, the Ohio Supreme Court decided *Matash v. State,* 177 Ohio St. 55 (1964). In that case, Matash appealed an order of the Department of Insurance revoking his insurance license. *Id.* at 55. Thirty-four days after Matash filed a notice of appeal, he filed a motion for judgment because the Department of Insurance failed to prepare and certify a complete record to the court as required by R.C. 119.12. *Id.* at 56. The court of common pleas entered a ruling in favor of Matash, and the court of appeals affirmed. *Id.* The Supreme Court of Ohio, likewise affirmed, and held that:

> [w]here an appeal from an order of an administrative agency has been duly made to the Common Pleas Court pursuant to Section 119.12, Revised Code, and the agency has not prepared and certified to the court a complete record of the proceedings within twenty days after receipt of the notice of appeal and the court has granted the agency no additional time to do so, the court must, upon motion of the appellant, enter a finding in favor of the appellant and render a judgment for the appellant.

*Id.* at syllabus.

{¶38} In 1976, the Supreme Court decided *Lorms v. State,* 48 Ohio St.2d 153 (1976). Unlike, in *Matash*, in *Lorms*, "the commission certified the record of its administrative proceedings to the court." *Id.* at 153. The problem in *Lorms* was that the commission failed to include two letters in the record. *Id.* at 153-154. Lorms moved for a judgment in his favor asserting that the commission failed to certify the complete record. *Id.* at 154. The court of common pleas overruled the motion concluding the letters were adequately summarized in the record. *Id.* The Supreme Court focused on the language in R.C. 119.12 that only requires a finding in favor of a partly who is "adversely affected" by the failure to certify a complete record. *Id.* at 155. The Court noted that "R.C. 119.12 is remedial in nature and should, therefore, be given a liberal construction designed to assist the parties in obtaining justice * * * ." (Internal quotation and citation omitted.) *Id.* Thus, the Court concluded that "[a]n agency's omission of items from the certified record of an appealed administrative proceeding does not require a finding for the appellant, pursuant to R.C. 119.12, when the omissions in no way prejudice him in the presentation of his appeal." *Id.* at syllabus. As Lorms was not prejudiced by the incomplete record, the Court concluded he was not entitled to judgment. *Id.* at 156.

{¶39} In 1986, the Supreme Court again revisited the provisions of R.C. 119.12 in *Arlow v. Ohio Rehab. Servs. Comm.*, 24 Ohio St.3d 153 (1986). In *Arlow*, the issue before the Court was "whether a certified record of an appealed administrative hearing that is timely

submitted, albeit with an unintentionally erroneous or omitted case number, constitutes a failure of certification which would require entry of a finding for the party appealing the administrative action pursuant to R.C. 119.12." *Id.* at 155. The Supreme Court reaffirmed the validity of the holdings in *Matash* and *Lorms*, *id.* at 155-156, and concluded that the error or omission in the case did not "not constitute a failure of certification in the absence of prejudice to the party appealing the administrative action." *Id.* at 155. In so doing, the Court noted that:

> [a] mechanistic interpretation of R.C. 119.12 where appellees have not shown prejudice and where a record has been submitted, albeit unintentionally with erroneous or omitted case numbers, may constitute the farthest boundary of the exception we set forth in *Lorms, supra.* Such an exception does not vitiate the basic premise of R.C. 119.12 where *no* action has been taken to certify an administrative record.

(Emphasis sic.) *Id.* at 156.

{¶40} The facts of the instant matter are distinguishable from all three cases. Unlike *Matash*, there is not a complete failure to file the required documents. Unlike *Lorms*, there does not appear to be a failure to file the documents comprising the record nor any assertion that the records are incomplete. However, there is a failure to file a proper certification, as the "certification," though bearing the proper case number, purports to certify the records as being those of a person other than Mrs. Gsellman.

{¶41} Thus, the question becomes whether this error is merely a typographical error, as the main opinion suggests, or a failure to certify the record because the agency did not actually certify the records that it filed are the complete records of the proceedings pertaining to Ms. Gsellman. Because this precise issue is not addressed by any of the Supreme Court cases, the dissent presents a logical and reasonable perspective. R.C. 119.12 states that:

> [w]ithin thirty days after receipt of a notice of appeal from an order in any case in which a hearing is required by sections 119.01 to 119.13 of the Revised Code, the agency shall prepare and certify to the court a complete record of the proceedings

in the case. Failure of the agency to comply within the time allowed, upon motion, shall cause the court to enter a finding in favor of the party adversely affected. Additional time, however, may be granted by the court, not to exceed thirty days, when it is shown that the agency has made substantial effort to comply.

{¶42} Thus, the statute requires that the agency both prepare and certify a complete record of the proceedings of the case. R.C. 119.12. In other words, the statute contains a directive not only to file the papers constituting the record, but to also provide a certification that the documents that are filed are actually a complete record of the proceedings. Compliance with this part of the statute is critical for it constitutes the agency's representation that the papers that have been filed are in fact the complete record of the proceedings. Arguably, filing a purported certification that does not actually certify that the records are in fact the complete record of the named party is a complete failure of the certification requirement contained in R.C. 119.12. This would be similar to filing an affidavit with incorrect information.

{¶43} Nonetheless, the progression of Supreme Court cases seems to suggest an unwillingness to require judgment in favor of the claimant when the agency has substantially complied with the requirements of R.C. 119.12 and there has been no showing of prejudice. *See, e.g., Arlow,* 24 Ohio St.3d at 156*.* There are no allegations that the record is incomplete or that the record is not that of Ms. Gsellman. This is clearly not a complete failure by the agency to comply with R.C. 119.12. Accordingly, on balance, it would seem that Appellant must demonstrate that it was prejudiced by the agency's failure to certify that Ms. Gsellman's records were her records. Appellant has not done so, and accordingly is not entitled to judgment based on this error.

CARR, P. J.
DISSENTING.

{¶44} I respectfully dissent as I would conclude that the Ohio Department of Job and Family Services did not properly certify Ms. Gsellman's records to the trial court. The circumstances the Supreme Court confronted in *Arlow v. Ohio Rehab. Servs. Comm.*, 24 Ohio St.3d 153, 155, (1986), where the record certified by the board merely specified the wrong case number, are distinguishable from the instant matter where ODJFS never certified that the records belonged to Ms. Gsellman. Accordingly, I would reverse and remand for the trial court to determine whether ODJFS should be given additional time to comply with the requirements of R.C. 119.12.


APPEARANCES:

MARK H. LUDWIG, Attorney at Law, for Appellant.

SHERRI BEVAN WALSH, Prosecuting Attorney, and LESLEY A. WALTER, Assistant Prosecuting Attorney, for Appellee.

MICHAEL DEWINE, Ohio Attorney General, and HENRY G. APPEL, Senior Assistant Attorney General, for Appellee.