Judgment affirmed in part
and reversed in part,
and cause remanded.

ROCCO and CORRIGAN, JJ., concur.

COKER, Appellee,

v.

ULCH, Appellant.

[Cite as *Coker v. Ulch,* 166 Ohio App.3d 778, 2006-Ohio-2349.]

Court of Appeals of Ohio,
Sixth District, Lucas County.

No. L–05–1272.

Decided May 12, 2006.

Lorin J. Zaner and Jill M. Varnes–Richardson, for appellee.

John L. Straub, for appellant.

PARISH, Judge.

{¶ 1} This is an appeal from a judgment of the Lucas County Court of Common Pleas, Domestic Relations Division, in which the trial court affirmed the magistrate's denial of a motion to terminate spousal support filed by appellant, Virginia M. Ulch, and ordered appellant to pay appellee, Joseph A. Coker, spousal support in the amount of $200 per month for an indefinite period of time. On appeal, appellant sets forth the following as her sole assignment of error:

{¶ 2} "The trial court erred in concluding that Ohio Revised Code § 3105.18(A) and (E) do not require termination and/or reduction of a spousal support obligation when continuation of the existing order will provide no economic benefit to the obligee."

{¶ 3} The undisputed facts are as follows. The parties were married on September 8, 1985. No children were born as issue of the marriage. On April 8, 1999, Joseph filed a complaint for divorce. On December 10, 1999, the trial court filed a judgment entry, in which it found the parties had reached an agreement regarding their respective marital rights and obligations, granted the parties a divorce, and divided their marital debts and assets. In addition, the trial court ordered Virginia to pay Joseph spousal support until November 30, 2004, after which the amount of spousal support could be modified upward or downward at the request of either party. The order also stated: "said spousal support will

terminate upon the occurrence of [Joseph's] death, remarriage and/or cohabitation with an unrelated female person."

{¶ 4} At the time of the divorce, Joseph, who is legally blind, was eligible for Social Security Disability benefits. However, sometime after the divorce, Joseph contracted an additional disease that left him totally disabled. As a result, Joseph began living in a nursing home and receiving Medicaid assistance, in addition to disability payments and spousal support.

{¶ 5} On December 16, 2004, Virginia filed a motion to terminate her spousal-support obligation, pursuant to the terms of the divorce decree. Joseph opposed the motion. In lieu of an evidentiary hearing, the parties agreed to the following stipulations:

{¶ 6} "1. A Judgment Entry of Divorce was entered in this proceeding on December 10, 1999 providing that [appellant] Virginia M. Ulch (fka Virginia M. Coker) was to pay to [appellee] Joseph A. Coker, as and for spousal support, the sum of $300 per month through a wage assignment from April 29, 1999 through and including November 30, 1999. Beginning December 1, 1999, and continuing for 3 years, the spousal support was to increase to $500 per month. Beginning December 1, 2002 and continuing for a period of 2 years, the support payment was to decrease to $300 per month. All spousal support obligations up to and including November 30, 2004 were not subject to modification.

{¶ 7} "2. Beginning December 1, 2004, the spousal support obligation of [Virginia] was reduced to $200 per month and became subject to modification 'upwards and/or downwards.' The only specific termination provision set forth by the Judgment Entry of Divorce was that the support would terminate 'upon the occurrence of [Joseph's] death, remarriage and/or cohabitation with an unrelated female person.'

{¶ 8} "3. [Virginia] has made all support payments through and including November, 2004 and has made the requisite payments for the months of December, 2004, January, 2005, February, 2005 and March, 2005.

{¶ 9} "4. [Appellee] Joseph A. Coker has become incapacitated, has been confined to a Nursing Home for the past 2 years, receives social security disability payments and Medicaid, and is not permitted to retain more than $30 per month as spending money,[1] which 'allowance' is paid from his social security disability benefits by the nursing facility. [Joseph] is legally blind and is suffering from ALS, commonly known as 'Lou Gehrig's Disease.'

---

1. As pointed out by the parties, Joseph is arguably entitled to a personal need allowance of $40 per month for toiletries, clothing, etc., pursuant to Ohio Adm.Code 5101:1-39-24(B)(23), a negligible difference of only $10 per month from the amount cited by the trial court.

{¶ 10} "5. All direct payments made by [Virginia] to [Joseph] must, according to federal law, be repaid to the federal government as a reimbursement to the social security payment system. Those payments are not received by [appellee] Joseph Coker.

{¶ 11} "6. [Virginia] contends that her obligation to [Joseph] is no longer necessary, as continued payments by [Virginia] to [Joseph] will not benefit [Joseph] to any extent.

{¶ 12} "7. [Joseph] contends that [Virginia's] payments should continue because the public should not be solely responsible for taking care of [Joseph] when [Virginia] has been ordered to pay spousal support. [Joseph] further states that it is not a hardship for [Virginia] to continuing [sic] to pay said spousal support."

{¶ 13} The case was referred to a domestic relations magistrate. On April 6, 2005, the magistrate found, based on the record and above stipulations, that a change of circumstances existed, in that Virginia's yearly income had increased from $39,784 to $56,579, while Joseph's income, which increased from $8,200 to $9,600, "continues to be from social security benefits." The magistrate concluded that Joseph had substantial need for assistance, and found Virginia's request to be relieved of her support obligation so that Joseph could be entirely supported by government benefits was "untenable and without basis in law." Accordingly, the magistrate denied Virginia's motion to terminate spousal support, and ordered her to pay Joseph $200 per month. On April 20, 2005, Virginia filed timely objections to the magistrate's decision.

{¶ 14} On July 25, 2005, the trial court filed a judgment entry in which it found that since the time of the divorce, Virginia enjoyed an increase in income of 42 percent, while Joseph's income, which consisted mainly of Social Security Disability payments, had increased by only 17 percent. The trial court further found that Virginia has the ability to pay support, while Joseph is totally disabled and living in a nursing home that is paid for, in part, by Medicaid.

{¶ 15} After making the above findings, the trial court stated that the purpose of the Medicaid program "is to provide assistance to financially needy citizens in their efforts to procure adequate health care." The trial court further stated that pursuant to Ohio Adm.Code 5101:1–39–08, each Medicaid recipient has a duty to utilize all other sources of income before resorting to Medicaid assistance.

{¶ 16} After reviewing the magistrate's decision and the record, which included the parties' stipulations and information as to their respective incomes, the trial court found that the amount of support ordered by the magistrate, $200 per month, "was appropriate and reasonable, in order to provide continued sustenance and for support of [Joseph]." Thereafter, the court concluded that because the spousal support currently paid by Virginia was being used to reimburse the

Medicaid program for a portion of Joseph's care, it would be against public policy to shift more of the burden of Joseph's care to the taxpayers by relieving Virginia of her obligation. Accordingly, Virginia's objections were overruled and the magistrate's decision was adopted by the trial court. A timely notice of appeal was filed on August 24, 2005.

{¶ 17} On appeal, Virginia asserts that by ordering her to pay $200 per month in spousal support, the trial court did not follow the dictates of R.C. 3105.18(A), which states that spousal support payments are to be for "both for sustenance and for support." Support for Virginia's argument is twofold: (1) because the spousal support payments being made to Joseph are reimbursed to the Medicaid program, they ultimately "do not go to Joseph" and (2) Joseph is eligible for Medicaid benefits that are sufficient to cover the full cost of his care, even if the spousal support payments are discontinued.

{¶ 18} We note at the outset that in domestic-relations proceedings, the trial court is vested with broad discretion in determining whether spousal support is necessary. *Kunkle v. Kunkle* (1990), 51 Ohio St.3d 64, 67, 554 N.E.2d 83, citing *Wolfe v. Wolfe* (1976), 46 Ohio St.2d 399, 75 O.O.2d 474, 350 N.E.2d 413. On appeal, the trial court's award of spousal support should not be overturned absent a finding of abuse of discretion. Id., citing *Holcomb v. Holcomb* (1989), 44 Ohio St.3d 128, 131, 541 N.E.2d 597. An abuse of discretion connotes more than a mere error of law or judgment, instead requiring a finding that the trial court's decision was unreasonable, arbitrary, or unconscionable. *Blakemore v. Blakemore* (1983), 5 Ohio St.3d 217, 219, 5 OBR 481, 450 N.E.2d 1140.

{¶ 19} Pursuant to R.C. 3105.18(E), the threshold issue in a case for modification of spousal support is whether "the court determines that the circumstances of either party have changed" and, in the case of a divorce, whether "the decree * * *. contains a provision specifically authorizing the court to modify the amount or terms of alimony or spousal support." R.C. 3105.18(E)(1). In this case, it is undisputed that the divorce decree provides for modification of the amount of spousal support after December 1, 2004. It is further undisputed that significant changes in the circumstances of the parties have occurred since the divorce, including a significant increase in Virginia's income and a radical decrease in Joseph's ability to take care of himself, to the point of total physical disability.

{¶ 20} In addition, Virginia's motion to terminate spousal support falls within the scope of R.C. 3105.18(E), since the terms " '[m]odification' and 'termination' of [a spousal-support] award are simply different points or degrees on the same continuum." *Kimble v. Kimble*, 97 Ohio St.3d 424, at ¶ 7, 780 N.E.2d 273, citing *In re Adams* (1989), 45 Ohio St.3d 219, 221, 543 N.E.2d 797. Accordingly, as the trial court observed, the relevant question in this case is not whether

spousal support *can* be modified, but, rather, *should* it be modified or, in this case, terminated. The burden of demonstrating that termination of spousal support is warranted falls on Virginia, because she is the movant. *Koch v. Koch,* 9th Dist. No. 03CA0111–M, 2004-Ohio-7192, 2004 WL 3017316, at ¶ 17.

{¶ 21} R.C. 3105.18(A), defines "spousal support" as "any payment or payments to be made to a spouse or former spouse, or to a third party for the benefit of a spouse or a former spouse, that is both for *sustenance and for support* of the spouse or former spouse." (Emphasis added.) Pursuant to R.C. 3105.18(C)(1), in determining "whether support is appropriate and reasonable," the trial court is required to consider the factors set forth in R.C. 3105.18(C)(1)(a) through (n),[2] which include the parties' income from all sources; their relative earning abilities; their ages and physical, mental, and emotional conditions; duration of the marriage; the parties' assets and liabilities; and "[a]ny other factor that the court expressly finds to be relevant and equitable."

{¶ 22} It is undisputed that Joseph's medical condition has deteriorated to a point where he requires constant medical care in a nursing-home environment. Accordingly, in the purest sense, Joseph is "in need" of "sustenance and support." It is further undisputed that Virginia is financially capable of paying $200 per month in spousal support. Nevertheless, an issue remains as to whether or not spousal support is "appropriate and reasonable" in this case, since Joseph's condition makes him eligible for Medicaid assistance.

{¶ 23} Because this issue appears to be one of first impression in Ohio, we must examine the applicable regulations governing Ohio's administration of federal Medicaid benefits. We begin by differentiating between Social Security Disability benefits and Medicaid benefits. The purpose of Social Security Disability ("SSI"), is to "insure a *minimum level of income* for persons who are over age 65, or blind, or disabled, who do not have sufficient income and resources to maintain a standard of living at the established federal minimum income level." (Emphasis added.) *Oatley v. Oatley* (1977), 57 Ohio App.2d 226, 227, 11 O.O.3d 260, 387 N.E.2d 245. In the context of a divorce proceeding, the purpose of SSI is to *supplement* spousal-support income, not to act as a substitute for it. Id., at 268, 11 O.O.3d 260, 387 N.E.2d 245.

{¶ 24} In contrast to the stated purpose of SSI benefits, the purpose of the Medicaid program is, first and foremost, to provide a "federal cost-sharing for each state's medicaid program" in order to *provide health care* for needy individuals who meet specific criteria. Ohio Adm.Code 5101:1–37–01; *Young v.*

---

2. The issue whether the trial court considered all the factors listed in R.C. 3105.18(A) has not been raised by either party. Accordingly, we do not address those factors that are not directly related to the issue raised on appeal.

*Ohio Dept. of Human Servs.* (1996), 76 Ohio St.3d 547, 668 N.E.2d 908, citing former Ohio Adm.Code 5101:1–39–01. The "role of income" is *the primary element* in determining Medicaid eligibility. Ohio Adm.Code 5101:1–39–08(A)(1).

{¶ 25} It is a basic tenet of Medicaid that "[a]n individual who does not avail himself-herself of a potential income is presumed to fail to do so in order to make himself/herself eligible for medicaid." Ohio Adm.Code 5101:1–39–08(A)(2). Accordingly, the Medicaid regulations require that *all income and resources* of an institutionalized adult must be considered in making eligibility and post-eligibility determinations regarding benefits. Ohio Adm.Code 5101:1–39–22. The term "income" is defined as "cash, income in-kind, or something of value which is received, available, and attributable to an individual." Ohio Adm.Code 5101:1–39–08(H). "Income" also includes, but is not limited to, retirement benefits, veterans' benefits, *and* SSI payments. Ohio Adm.Code 5101:1–1–39–08(A)(2)(a) through (f). "Resources" are defined as "cash, personal property, and real property that an individual * * * has an ownership interest in, has the legal ability to access in order to convert to cash (if not already cash), *and is not legally prohibited from using for support and maintenance.*" (Emphasis added.) Ohio Adm.Code 5101:1–39–05(A)(8.)

{¶ 26} On appeal, Virginia argues that she should no longer be forced to reimburse the federal or state coffers, because Joseph's Medicaid benefits are sufficient to meet all of his present and future needs. While this argument is somewhat compelling, it requires us to completely ignore the above-stated public policy that Medicaid was intended to be the *last resource* of individuals in need of medical care, not a vehicle for avoiding financial obligations that are otherwise appropriate and reasonable, thereby shifting the burden to the taxpayers. See *In re Estate of Cross* (1996), 75 Ohio St.3d 530, 664 N.E.2d 905 (a guardianship case in which the Supreme Court of Ohio recognized the existence of a strong public policy in favor of conserving public resources, i.e., Medicaid benefits, for the most disadvantaged individuals).

{¶ 27} As set forth above, the record shows that Joseph began receiving Social Security Disability benefits before the parties were divorced. In spite of Joseph's disability income, the parties agreed that Virginia would pay spousal support for at least six years, in varying amounts, after which the trial court could determine whether spousal-support payments of $200 per month should continue. The only specific provisions for terminating spousal support were if Joseph died, remarried, or cohabitated with an unrelated adult female. However, after Joseph's medical condition deteriorated, Virginia asked to be relieved of her support obligation on the grounds that Joseph could now be cared for by Medicaid. The trial court determined, after examining the record, the magistrate's recommendation, the parties' stipulations, the regulations governing Med-

icaid benefits, and applicable law, that it was appropriate and reasonable for Virginia to continue to pay $200 per month in spousal support. It is undisputed that, if Joseph were not receiving Medicaid benefits, spousal support would be both necessary and appropriate.

{¶ 28} On consideration, we find that under the circumstances presented in this case, the trial court's order for Virginia to continue to pay $200 in spousal support was not arbitrary, unreasonable, or unconscionable. Accordingly, the trial court did not abuse its discretion. Virginia's sole assignment of error is not well taken.

{¶ 29} The judgment of the Lucas County Court of Common Pleas, Domestic Relations Division, is hereby affirmed. Appellant is ordered to pay the costs of this appeal for which sum judgment is rendered against appellant on behalf of Lucas County and for which execution is awarded. See App.R. 24.

Judgment affirmed.

SINGER, P.J., and SKOW, J., concur.