[Cite as *Cowan v. Ohio Dept. of Jobs & Family Servs.*, 2021-Ohio-1798.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO


MARY COWAN,                  :        APPEAL NO. C-200025
                                     TRIAL NO. A-1901563

    Appellant,              :

                            :        *O P I N I O N.*

   vs.                        

                            :

OHIO DEPARTMENT OF JOB AND   :
FAMILY SERVICES,

                            :

    Appellee.              :


Civil Appeal From: Hamilton County Court of Common Pleas

Judgment Appealed From Is: Affirmed

Date of Judgment Entry on Appeal: May 26, 2021


*sb2 inc.*, *Amy C. Baughman*, for Appellant,

*Dave Yost,* Ohio Attorney General, and *Amy R. Goldstein,* Assistant Attorney General, Health and Human Services Section, for Appellee.

**BERGERON, Judge.**

{¶1} A nursing home resident was denied Medicaid benefits because she owned two parcels of land valued at $6,000, exceeding the $2,000 resource limit. She appealed to the common pleas court, seeking to exclude the parcels because no one wanted to buy the land (she ultimately gave the land away). The case took a jurisdictional detour, however, when the trial court dismissed the resident's appeal for lack of jurisdiction, reasoning that her authorized representative lacked standing to pursue the matter. But in the event we saw things differently on jurisdiction, the trial court alternatively affirmed the Medicaid denial because the resident had the legal ability to access (and liquidate) the property. We conclude that the trial court erred with respect to jurisdiction because the resident pursued this appeal in her own name and never made the authorized representative a party to the proceedings. Nevertheless, we affirm the trial court's alternative holding that the resident's property was a countable resource.

I.

{¶2} In September 2017, appellant Mary Cowan was admitted to Carespring, a long-term nursing facility. However, Ms. Cowan soon needed assistance with paying for her care, so, at the behest of the facility, she applied for Medicaid benefits. To facilitate this process, Ms. Cowan signed a "Designation of Authorized Representative" form, granting Carespring authority to submit her application, participate in eligibility reviews, and take necessary actions to establish eligibility. Ms. Cowan also provided Carespring permission to pursue legal action in her name or in Carespring's name—even waiving potential conflicts of interest.

{**¶3**}  Ultimately, the Ohio Department of Job and Family Services (ODJFS) denied Ms. Cowan's Medicaid application on the ground that her assets exceeded the resource limit.  Ms. Cowan owned two parcels of land that the county auditor valued at $3,000 each, and that she had listed for sale.  Unless an exclusion applies, Ohio's Medicaid guidelines provide that individuals are not eligible for benefits if the value of their personal and real property exceeds $2,000.  And because no exclusion applied here, the $6,000 value assessed by the county auditor exceeded the regulatory threshold.  Although some evidence suggests that the auditor overvalued the two plots, that issue is not before us.  As relevant here, Ms. Cowan argued that her property should not count as a resource because she could not locate a buyer.[1]  ODJFS disagreed and, after exhausting her administrative appeals, Ms. Cowan appealed to the common pleas court pursuant to R.C. 5101.35(E).

{**¶4**}  At the trial court, however, this case shifted focus to standing and jurisdictional concerns.  ODJFS began challenging Carespring's involvement in the appeal, ultimately obtaining a concession by Ms. Cowan's attorney that he represented Carespring.  ODJFS then lodged a jurisdictional objection, arguing that Carespring did not have legal standing to sue, thus stripping the trial court of the ability to hear the appeal.  Ultimately, the trial court agreed with ODJFS, dismissing the case for lack of jurisdiction.  However, the trial court issued an alternative ruling on the merits, affirming Ms. Cowan's Medicaid denial on the basis that her property exceeded the resource limit.  Ms. Cowan now appeals, bringing three assignments of error, challenging both of the trial court's holdings.

---

[1] We understand that, subsequent to the events described in this appeal, Ms. Cowan simply gave the property away and ultimately became eligible for Medicaid.  This appeal concerns her eligibility prior to that time.

II.

{¶5} In her first assignment of error, Ms. Cowan attacks the trial court's conclusion that it lacked jurisdiction to hear the case. "Standing relates to a party's right to make a legal claim or seek judicial enforcement of a legal duty or right." *Albanese v. Batman*, 148 Ohio St.3d 85, 2016-Ohio-5814, 68 N.E.3d 800, ¶ 24. "It is well established that before an Ohio court can consider the merits of a legal claim, the person seeking relief must establish standing to sue." (Internal quotation marks omitted.) *Moore v. Middletown*, 133 Ohio St.3d 55, 2012-Ohio-3897, 975 N.E.2d 977, ¶ 21. And "[s]tanding is certainly a jurisdictional requirement * * * ." *Bank of Am., N.A. v. Kuchta*, 141 Ohio St.3d 75, 2014-Ohio-4275, 21 N.E.3d 1040, ¶ 22. "[A] party's lack of standing vitiates the party's ability to invoke the jurisdiction of a court—even a court of competent subject-matter jurisdiction—over the party's attempted action." *Id.*

{¶6} Article IV, Section 4(B), of the Ohio Constitution provides that "courts of common pleas and divisions thereof shall have such original jurisdiction over *all justiciable matters* and such powers of review of proceedings of administrative officers and agencies *as may be provided by law.*" (Emphasis added.) Thus, standing may generally be acquired in two ways: (1) where a "party has alleged a 'personal stake in the outcome of the controversy,' " (Internal quotation marks omitted.) *Fed. Home Loan Mtge. Corp. v. Schwartzwald*, 134 Ohio St.3d 13, 2012-Ohio-5017, 979 N.E.2d 1214, ¶ 21; or (2) where a statute confers standing, *Moore* at ¶ 48. We review questions of standing de novo. *See Moore* at ¶ 20 ("Whether a party has established standing to bring an action before the court is a question of law, which we review de novo.").

4

{¶7} Ms. Cowan primarily argues that Carespring enjoys statutory standing pursuant to R.C. 5101.35. As relevant here, that statute provides that a Medicaid "applicant, participant * * * [or] recipient * * * * who disagrees with an administrative * * * decision * * * may appeal * * * to the court of common pleas * * * ." R.C. 5101.35(A)(2) and (E). Ms. Cowan concedes that Carespring is not a Medicaid applicant, participant, or recipient, but she nonetheless insists that, under the Administrative Code, Carespring "[s]tands in the place of the individual." *See* Ohio Adm.Code 5160-1-33(B)(4); *see also* Ohio Adm.Code 5160:1-2-08(C)(1) ("An individual may designate an authorized representative, in writing, to stand in place of the individual and act with authority on behalf of the individual, as described in rule 5160-1-33 of the Administrative Code."). For its part, ODJFS counters that the Administrative Code cannot impact the jurisdictional calculus because standing can only derive from a statutory source. *See Communications Workers of America, AFL-CIO v. Pub. Utilities Commission*, 57 Ohio St.2d 76, 77, 387 N.E.2d 230 (1979) (" 'Unless a *statute* otherwise provides it is fundamental that no one can appeal from an order (of the commission) to which he is not a party.' ") (Emphasis added.), quoting *Harrison v. Pub. Util. Comm.*, 134 Ohio St. 346, 347, 16 N.E.2d 943 (1938). Thus, because Carespring does not meet any of the statutory definitions in R.C. 5101.35(A)(2) (applicant, participant, or recipient), ODJFS concludes that Carespring lacks standing.

{¶8} The analysis becomes even more complicated when we look at Ohio caselaw. The Eighth District recently addressed this issue, concluding that both the state and federal Medicaid provisions give a nursing facility standing to sue in its capacity as an authorized representative. *See Tiggs v. Ohio Dept. of Job & Family*

*Serv.*, 2018-Ohio-3164, 118 N.E.3d 985, ¶ 28 (8th Dist.) ("[The nursing facility] had authority to appeal to the trial court under R.C. 5101.35 * * * ."); *Id.* at ¶ 34 ("[W]e cannot say that the trial court erred in its interpretation of 42 C.F.R. 435.923(b)(4) when it found that [the nursing facility] * * * was able to represent [the resident] in all Medicaid-related matters, including the appeal to the trial court."). However, we note that *Tiggs* affirmed a trial court's decision that "relied solely upon a recent federal court decision, *Doctors Nursing & Rehab. Ctr. v. Norwood*, N.D.Ill. No. 1:16-cv-9837, 2017 WL 2461544 (June 7, 2017)." *Id.* at ¶ 20. Muddying the waters further, *Norwood* only addressed standing with respect to federal law, and it has since been effectively overruled by the Seventh Circuit. *See Bria Health Serv., LLC v. Eagleson*, 950 F.3d 378, 383 (7th Cir.2020) ("[T]he text of the regulation, the broader regulatory context and purpose, and the comments during rulemaking all indicate that 'matters with the agency' relate only to communication and document processing in interactions *with* the agency and do not reach civil litigation against it."). Similarly, *Bria Health Services* only addressed the federal provision, shedding little light on whether Ohio law conveys standing to authorized representatives.

{¶9} At this point, however, we need not decide whether to follow *Tiggs* because, while we appreciate the parties' arguments, we ultimately find them misguided. "Standing here is intertwined with Civ.R. 17(A)'s requirement that every action 'be prosecuted in the name of the real party in interest.' " *Wells Fargo Bank, N.A. v. Freed*, 3d Dist. Hancock No. 5-12-01, 2012-Ohio-5941, ¶ 21, quoting Civ.R. 17(A). *See Self Help Ventures Fund v. Jones*, 11th Dist. Ashtabula No. 2012-A-0014, 2013-Ohio-868, ¶ 19 ("Standing is similar to the requirement in Civ.R. 17(A) that every action 'shall be prosecuted in the name of the real party in interest.' "). Of

6

course, some exceptions exist, such as when a guardian sues on behalf of a minor, but in the guardian's own name. *See* Civ.R. 17(B); R.C. 2111.17 (permitting guardians to "sue in the guardian's own name, describing the guardian as suing on behalf of the ward.").

{¶10} Perhaps Ms. Cowan is correct that R.C. 5101.35 and Ohio Adm.Code 5160-1-33 would similarly permit Carespring to sue in its own name, on her behalf. But we need not decide this question because that's not what happened here. It is undisputed that Ms. Cowan pursued this case from the outset in her own name. Carespring has never appeared as a party on any case notice, brief, or document. This procedural history stands in contrast with *Tiggs*, where the nursing facility was named on the appeal. *See Tiggs* (listing the case caption as "Persey Tiggs C/O Indian Hills Healthcare Group, Inc. v. Ohio Department of Job and Family Services"). We further note that, contrary to the trial court's conclusion, the attorney never disclaimed representation of Ms. Cowan at one of the hearings. A review of the transcript shows that the attorney indicated he "represent[ed] Carespring * * *, authorized representative for Mary Cowan, the appellant." This statement does not disavow representation of Ms. Cowan. Nor does it contradict the attorney's repeated representations throughout the case that he represented Ms. Cowan. Both can be true. Carespring may have procured the attorney's services, but in her authorized-representative form, Ms. Cowan expressly permitted Carespring to hire an attorney to represent her.

{¶11} Thus, even if Carespring pulled the marionette strings behind the curtain, only Ms. Cowan appeared as a party before the court of common pleas and this court. As a result, we have no basis for questioning her standing. Perhaps

7

issues could arise regarding whether Ms. Cowan authorized Carespring to hire an attorney to represent her, but ODJFS does not broach such matters here. *See Peck v. Ohio Dept. of Job & Family Serv.*, 11th Dist. Geauga No. 2018-G-0152, 2018-Ohio-2353, ¶ 19 ("Although the issue has been presented in terms of standing, we agree * * * that the issue is not whether [the nursing facility] has * * * standing to bring the appeal * * * * [t]he issue is * * * whether [it] was duly authorized by [the resident] to file on her behalf."). We conclude that the trial court erred by concluding that it did not have jurisdiction over this case and therefore sustain Ms. Cowan's first assignment of error.

### III.

{¶12} Success on the first assignment of error, however, does not necessarily spell reversal. In her second assignment of error, Ms. Cowan challenges the trial court's alternative holding—that the value of her two plots of land exceeded Medicaid's resource limit. She reasons that the parcels should not have been counted because she could not liquidate them, essentially because no one wanted to buy them. We nevertheless conclude that her property constituted a countable resource because Ms. Cowan had the legal authority to sell them, regardless of how difficult or easy the task at hand.

{¶13} Ohio Adm.Code 5160:1-3-05.1(A) "describes how resources are treated for purposes of determining eligibility for medical assistance." *Id.* And the "maximum combined value of all [countable] resources an individual can have an ownership interest in and still qualify for medical assistance * * * is two thousand dollars." Ohio Adm.Code 5160:1-3-05.1 at (B)(8) and (C)(1). "Resources" are defined as "cash, funds held within a financial institution, investments, personal

property, and real property an individual * * * [1] has an ownership interest in, [2] has the legal ability to access in order to convert to cash, and [3] is not legally prohibited from using for support and maintenance." *Id.* at (B)(7), referencing Ohio Adm.Code 5160:1-1-01(B)(72). Only the second element is in dispute here—whether Ms. Cowan had the legal ability to access the two parcels of land.

{¶14} Emphasizing pragmatism, Ms. Cowan contends that the inability to procure a willing buyer essentially meant that she did not have the legal ability to access her property. For support, she points to a federal regulation, 20 C.F.R. 416.1201, which provides in relevant part: "If a property right cannot be liquidated, the property will not be considered a resource of the individual (or spouse)." 20 C.F.R. 416.1201(a)(1). Using the federal regulation as a springboard, Ms. Cowan maintains that without a willing buyer, she did not have "the legal ability to access in order to convert to cash." *See* Ohio Adm.Code 5160:1-3-05.1(B)(7) and 5160:1-1-01(B)(72).

{¶15} The first problem with Ms. Cowan's pitch is that 20 C.F.R. 416.1201 deals with SSI determinations, a federal obligation. And Ohio courts considering similar arguments have squarely rejected the grafting of 20 C.F.R. 416.1201 onto Medicaid eligibility, which represents a state responsibility. *See* 20 C.F.R. 416.2116 (providing that the Social Security Administration may assist states in making Medicaid eligibility determinations, but only if the state requests); *Underwood v. Ohio Dept. of Job & Family Serv.*, 11th Dist. Geauga No. 2019-G-0215, 2019-Ohio-4924, ¶ 29 (holding "20 CFR 416.1201 inapplicable to determining Ohio Medicaid eligibility"); *Communicare v. Ohio Dept. of Job and Family Serv.*, 8th Dist. Cuyahoga No. 106874, 2019-Ohio-3757, ¶ 14–15 (same).

{¶16} The second problem is that Ms. Cowan's interpretation pays little fidelity to either the plain language of the regulation or to Ohio caselaw. The plain meaning of "legal ability to access" precludes an exemption for impracticability. And confirming this view, we note that the Administrative Code previously allowed for such an exemption: "If an individual owns property that affects eligibility and the property has not been sold, it will not be counted as an available resource as long as the individual continues to list the property for sale at an amount equal to the market value determined by the county auditor." Former Ohio Adm.Code 5160:1–3–05.1(C)(6)(a) (Effective 1/15/2015). But that provision was repealed in August 2016. Interpreting the current language in the Administrative Code, the Eighth District has concluded that if the applicant has the legal authority to sell the property, the plain language of the Code renders it a countable resource (assuming, of course, that some other exclusion does not apply). *See Communicare* at ¶ 13 ("Whether [the applicant] was able to find a purchaser is a wholly different consideration from what the regulation contemplated, namely whether [the applicant] had the legal authority to sell the properties in the first place."). Based on a plain reading of the Administrative Code, we agree with that interpretation.

{¶17} For these reasons, we conclude that the trial court correctly determined that Ms. Cowan's two plots of land were countable resources. She has presented no *legal* impediment to her ability to sell those properties, and we decline to read an impracticability exception into the Administrative Code (that was recently rejected). We therefore overrule Ms. Cowan's second assignment of error.

IV.

{¶18} Ms. Cowan finally argues that the trial court erred in affirming ODJFS's denial because Ohio's Medicaid scheme is invalid. She argues that Ohio's Medicaid regulations are invalid because the state never obtained approval from the Centers for Medicare and Medicaid Services. However, Ms. Cowan cites to no authority, or to anything in the record, supporting her assertion that Ohio's Medicaid plan is noncompliant, and we decline to speculate on this point. We therefore overrule her third assignment of error.

\*       \*       \*

{¶19} In light of the foregoing analysis, we sustain Ms. Cowan's first assignment of error, overrule her second and third assignments of error, and affirm the judgment of the trial court.

Judgment affirmed.

**MYERS, P. J.,** and **CROUSE, J.,** concur.

Please note:

The court has recorded its entry on the date of the release of this opinion