[Cite as *Shell v. Ohio Dept. of Job & Family Servs.*, 2024-Ohio-160.]

## COURT OF APPEALS OF OHIO

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

DOROTHY SHELL,                                    :

    Plaintiff-Appellant,                    :

                                      No. 112448

    v.                                              :

OHIO DEPARTMENT OF JOB AND            :
FAMILY SERVICES,

    Defendant-Appellee.                     :

---

JOURNAL ENTRY AND OPINION

**JUDGMENT:** REVERSED
**RELEASED AND JOURNALIZED:** January 18, 2024

---

Administrative Appeal from the Cuyahoga County Court of Common Pleas
Case No. CV-22-965289

---

### *Appearances:*

Sb2 inc. and Amy C. Baughman, *for appellant.*

Dave Yost, Ohio Attorney General, and Theresa R. Dirisamer, Senior Assistant Attorney General, Health and Human Services Section, *for appellee.*

MICHAEL JOHN RYAN, J.:

{¶ 1} This is an administrative appeal brought by plaintiff-appellant, Dorothy Shell, through her Attorney-in-Fact, Shannon Gilberry, concerning the denial of long-term care Medicaid due to what the defendant-appellee, Ohio

Department of Job and Family Services ("ODJFS"), determined were excess resources in the form of ownership of life insurance policies with "cash surrender values" ("CSV") in excess of the Medicaid-eligibility resource limit. Although Shell reported that she transferred ownership of those policies to a funeral home, ODJFS found that she did not provide proof of an ownership change and, therefore, the life insurance policies remained countable resources. Shell requested a state hearing, which upheld the denial of her application for long-term care Medicaid based upon excess resources. Shell filed an administrative appeal, which affirmed the state hearing decision. Shell appealed the administrative appeal to the Cuyahoga County Common Pleas Court, which affirmed the administrative appeal decision, finding it was supported by reliable, probative, and substantial evidence. For the reasons that follow, we reverse the decision of the trial court.

**Background**

{¶ 2} Shell is in her seventies and suffers from heart disease, congestive heart failure, lupus, vascular disease, and has a history of stroke. She is also legally blind. On June 3, 2021, Shell was admitted to Highland Pointe, a long-term care facility, where she receives around-the-clock skilled nursing.

{¶ 3} Shortly after her admission to the facility, Shell designated Highland Pointe as her authorized representative. Highland Pointe filed an application for long-term care Medicaid benefits on Shell's behalf seeking ongoing benefits beginning June 1, 2021.

**{¶ 4}** At the time of her admission to Highland Pointe, Shell owned five life insurance policies with a combined CSV of $5,433.77. At issue in this appeal are Shell's policies with Baltimore Life. The five policies are as follows:

(1) Globe Life $587.25;

(2) Transamerica Life $582.70;

(3) Baltimore Life $1,743.99;

(4) Baltimore Life $1,688.33;

(5) Baltimore Life $846.50.

**{¶ 5}** Shell entered into a preplanned funeral contract with Calhoun Funeral Home. The contract contained an irrevocable assignment of Shell's policies with Baltimore Life Insurance. Calhoun Funeral Home subsequently provided a letter to the Cuyahoga Job and Family Services ("county") stating what policies were transferred from Shell to Calhoun. The letter stated that the policies held with Baltimore Life and TransAmerica Life were in progress to be forwarded to Calhoun as beneficiary. According to Shell, the only remaining policy left in her name as of November 12, 2021, was her Globe Life policy in the amount of $587.25.

**{¶ 6}** On February 3, 2022, the county determined that Shell was over resourced, despite the assignments of her policies, and denied her application for long-term care Medicaid. Shell requested a state hearing. The state hearing decision was issued on April 29, 2022, finding that there was no evidence that Shell was no longer the owner of her life insurance policies. The state hearing decision overruled Shell's appeal. On May 16, 2022, Shell filed an administrative appeal. On May 25,

2022, a decision was issued finding that a denial of Shell's application for long-term care Medicaid was warranted on the ground that she was over the resource limits and upholding the state hearing decision.

{¶ 7} Shell appealed to the Cuyahoga County Common Pleas Court. The court upheld the state hearing decision, finding "reliable, substantive evidence to support the position of ODJFS."

## Assignments of Error

I. The February 3, 2022 notice of action issued to Ms. Shell denying her application for long-term care Medicaid is defective. It is irrelevant to the case what the attorney knew at the time of the state hearing, after having had the benefit of reviewing the appellee's appeal summary.

II. The alleged resources, the life insurance policies, were no longer available to Ms. Shell after they were assigned to the funeral home by Ms. Shell's attorney-in-fact. Because they are not available to Ms. Shell, they are also not countable resources for Medicaid eligibility purposes.

## Law and Analysis

### Standard of Review

{¶ 8} R.C. 5101.35(E) authorizes individuals who disagree with an administrative appeal to appeal to the court of common pleas in the county in which they reside. Pursuant to R.C. 119.12, the common pleas court must examine the entire record, conduct a hearing, and affirm an agency's decision only if it is supported by "reliable, probative, and substantial evidence in accordance with law." The common pleas court's "review of the administrative record is neither a trial de novo or an appeal of questions of law only, but a hybrid review in which the court 'must appraise all the evidence as to the credibility of the witnesses, the probative

character of the evidence, and the weight thereof.'" *Lies v. Ohio Veterinary Med. Bd.*, 2 Ohio App.3d 204, 207, 441 N.E.2d 584 (1st Dist.1981), quoting *Andrews v. Bd. of Liquor Control*, 164 Ohio St. 275, 280, 131 N.E.2d 390 (1955). With respect to purely legal questions, however, the common pleas court reviews de novo. *See Ohio Historical Soc. v. State Emp. Relations Bd.*, 66 Ohio St.3d 466, 471, 613 N.E.2d 591 (1993) ("courts exercise independent judgment on matters of law").

**{¶ 9}** An "appellate court's review is even more limited than that of the trial court." *Pons v. Ohio State Med. Bd.*, 66 Ohio St.3d 619, 621, 614 N.E.2d 748 (1993). Unlike the court of common pleas, we do not determine the weight of the evidence. *Id.*; *Univ. Hosp., Univ. of Cincinnati College of Medicine v. State Emp. Relations Bd.*, 63 Ohio St.3d 339, 587 N.E.2d 835 (1992).

**{¶ 10}** Traditionally, in Ohio, a reviewing court has been called upon to give "due deference" to agency statutory interpretation. *See Leon v. Ohio Bd. of Psychology*, 63 Ohio St.3d 683, 687, 590 N.E.2d 1223 (1992) (holding that courts reviewing administrative decisions are to abide by a due deference standard); *see also Ohio Historical Soc.* at *id.* More recently, the Ohio Supreme Court has revisited the deference standard reviewing courts are to give to administrative decisions and clarified that the judiciary is never required to defer to an administrative interpretation of the law. *TWISM Ents., L.L.C. v. State Bd. of Registration for Professional Engineers & Surveyors*, 172 Ohio St.3d 225, 2022-Ohio-4677, 223 N.E.3d 371, ¶ 3. "An agency interpretation is simply one consideration a court may

sometimes take into account in rendering the court's own independent judgment as to what the law is." *Id.*

**Life Insurance Policy as a Countable Resource**

**{¶ 11}** At the time Shell applied for Medicaid benefits, if an applicant's countable resources exceeded the $2,000 "resource limit," the applicant was ineligible for coverage. *See* former Ohio Adm.Code 5160:1-3-05.1(B)(8)(a), effective Aug. 1, 2016. "'Resource limit' meant the maximum combined value of all resources an individual can have an ownership interest in and still qualify for medical assistance." Former Ohio Adm.Code 5160:1-3-05.1(B)(8), effective Aug. 1, 2016. "Resources" were defined as

> cash, funds held within a financial institution, investments, personal property, and real property an individual and/or the individual's spouse has an ownership interest in, has the legal ability to access in order to convert to cash, and is not legally prohibited from using for support and maintenance.

Former Ohio Adm.Code 5160:1-1-01(B)(72), effective Sept. 1, 2017; *see also* former Ohio Adm.Code 5160:1-3-05.1(B)(7), effective Sept. 1, 2017.[1]

**{¶ 12}** Former Ohio Adm.Code 5160:1-3-05.1(C), effective Sept. 1, 2017, provided that an individual is ineligible for Ohio Medicaid if he or she has an ownership interest in resources with an aggregate or total countable value that exceeds the set resource limit. "Countable resources" are the resources remaining

---

[1] Current Ohio Adm.Code 5160:1-1-01(B)(82), effective Jan. 1, 2023, defines "resources" as "cash, other liquid asset, personal property, and real property an individual * * * has an ownership interest in, has the legal ability to access in order to convert to cash (if not already cash), and is not legally prohibited from using for support and maintenance."

"after all exclusions have been applied." Former Ohio Adm.Code 5160:1-3-05.1(B)(1), effective Sept. 1, 2017. The resource limit for an individual is $2,000. Former Ohio Adm.Code 5160:1-3-05.1(B)(8)(a), effective Sept. 1, 2017.

{¶ 13} A life insurance policy is a countable resource to the policy owner if it generates a CSV. Ohio Adm.Code 5160:1-3-05.12(C). A CSV is a form of equity value that the policy accrues over time and that the owner can obtain by canceling the policy before it matures or the insured dies. Ohio Adm.Code 5160:1-3-05.12(B)(3). "The total CSV of all life insurance policies for an individual is excluded if the total face value of the policies is equal to or less than [$1,500] for any one individual." Ohio Adm.Code 5160:1-3-05.12(C)(1). But "[i]f the total face value of all life insurance policies for any one individual is more than [$1,500], then the total CSV of all the policies for that individual is counted toward the applicable resource limit." *Id.*

{¶ 14} If a life insurance policy has a CSV, the administrative agency must distinguish between the owner of the policy and the insured. Ohio Adm.Code 5160:1-3-05.12(E)(1). Because the owner of the policy is the only one who can receive the proceeds of the policy, a life insurance policy with a CSV is only a countable resource if the individual is the owner of the policy, regardless of whether or not the individual is also the insured. Ohio Adm.Code 5160:1-3-05.12(E)(2).

{¶ 15} "A life insurance policy is an available resource only when the policy is owned by the individual or person whose resources are deemed to the individual." Ohio Adm.Code 5160:1-3-05.12(E)(3). "If the consent of another person is needed

to surrender a policy for its full CSV, the policy is available as a resource after the individual has obtained the consent." *Id.* If consent cannot be obtained, the policy is not considered available; however, the individual "must make a reasonable effort to obtain consent. * * * Any doubt about possible availability is resolved by contacting the insurance company." *Id.*

{¶ 16} Thus, if Shell's countable resources exceeded $2,000 at the time she applied for long-term Medicaid benefits, including life insurance policies with an aggregate CSV of greater than $1,500, she was ineligible for benefits.

**Defective Notice**

{¶ 17} In the first assignment of error, Shell argues that the February 3, 2022 ODJFS Notice of Action denying her benefits is defective, and therefore, did not properly notify her of the reasons for the denial.

{¶ 18} Medicaid, which is codified in 42 U.S.C. 1396a, "represents a joint state and federal effort to provide medical assistance to individuals with limited financial resources." *IX Chamberlain v. Ohio Dept. of Job & Family Servs.*, 1st Dist. Hamilton No. C-210145, 2022-Ohio-2309, ¶ 10, citing *Wis. Dept. of Health & Family Servs v. Blumer*, 534 U.S. 473, 122 S.Ct. 962, 151 L.Ed.2d 935 (2002). State participation in Medicaid is optional, but once a State elects to participate, it must comply with the requirements of Title XIX of the Social Security Act. *IX Chamberlain* at *id.*, citing *Rodefer v. Colbert*, 2015-Ohio-1982, 35 N.E.3d 852, ¶ 19 (2d Dist.). Thus, as a condition of receiving federal funds, Ohio is required to

operate the Medicaid program in compliance with the Social Security Act and implementing regulations.

{¶ 19} Federal Medicaid regulations for issuing notice of a denial of Medicaid benefits are set forth in applicable sections of 42 C.F.R. 431.210:

431.210 Content of notice.

A notice * * * must contain[:]

(a) A statement of what action the * * * skilled nursing facility * * * intends to take and the effective date of such action;

(b) A clear statement of the specific reasons supporting the intended action;

(c) The specific regulations that support * * * the action;

(d) An explanation of [:]

(1) The individual's right to request a local evidentiary hearing if one is available, or a State agency hearing; * * *

 (e) An explanation of the circumstances under which Medicaid is continued if a hearing is requested.

{¶ 20} The Ohio Administrative Code also addresses the content of a notice. Ohio Adm.Code 5101:6-2-03(A)(1)(a) provides that "[t]he notice shall contain a clear and understandable statement of the action the agency has taken and the reasons for it * * * ." Section 5101:6-2-03(A)(1)(b) provides that the notice shall contain "citations to applicable regulations."

{¶ 21} Shell received a notice of action, which stated that her application was denied because: "Your countable resources exceed the resource limit for this program. Ohio Administrative Code Rule 5160:1-3-05.1(B)(10)." Shell claims that

the notice was insufficient to give notice of the reason for the denial of benefits because it did not properly notify her of the reasons for denial. Shell also argues that the notice is insufficient because it references a code section, 5160:1-3-05.1(B)(10), that did not exist at the time notice was issued.[2]

{¶ 22} ODJFS contends that the notice was sufficient because it complied with federal and state regulations. It also argues that any error in citation to the applicable statutes was harmless or waived. The trial court agreed, finding that "the Notice was not so defective that Appellant was unaware of the basis for her denial of benefits."

{¶ 23} ODJFS cites *Gsellman v. Ohio Dept. of Job & Family Servs.*, 9th Dist. Summit No. 25954, 2012-Ohio-1620, ¶ 16, in support of its position that Shell was provided sufficient notice of the reasons for its denial of her claim. In *Gsellman*, the appellant (Gsellman's estate) argued that it was not provided reasonable notice and an opportunity to be heard because the notice denying her benefits did not inform Gsellman of the specific reasons why it denied her application. The notice that Gsellman received provided that the department "denied your Medicaid for the aged application" and that the reason was "value of resources exceeds program eligibility limits[,]" and referenced Rule 5101:1-39-34, the section under which appellant was denied benefits. The court concluded that it contained a "clear and understandable" explanation of the agency's decision and reasoning. *Id.*

---

[2] At the time Shell's application was filed, Ohio Adm.Code 5160:1-3-05.1(B)(10) did not exist. Ohio Adm.Code 5160:1-3-05.1(B)(10) now defines what a "Trust" is in relation to the Code.

**{¶ 24}** In this case, there is no indication on the notice that would give Shell any indication what resources put her over the resource limits. Moreover, the code section the notice refers to, 5160:1-3-05.1(B)(10), did not exist at the time notice was issued.

**{¶ 25}** ODJFS contends that because Shell was able to exercise her right to a hearing, any error in the notice was harmless. As mentioned, once a state elects to participate in the Medicaid program, it must fully comply with federal statutes and regulations in its administration of the program. 42 C.F.R. 431.210(a) and (b) provide that a notice must contain both a statement of what action the skilled nursing facility intends to take and the effective date of such action and "a clear statement of the specific reasons supporting the intended action." Under Ohio regulations, "[t]he notice shall contain a clear and understandable statement of the action the agency has taken and the reasons for it," Ohio Adm.Code 5101:6-2-03(A)(1)(a), and the notice shall contain "citations to applicable regulations," Ohio Adm. Code 5101:6-2-03(A)(1)(b).

**{¶ 26}** "When construing the relevant provisions of a statute, this court strives to ascertain and effectuate the legislature's intent." *State v. Carlson*, 9th Dist. Medina No. 22CA0015-M, 2023-Ohio-3514, ¶ 10, citing *State v. Stallings*, 150 Ohio App.3d 5, 2002-Ohio-5942, 778 N.E.2d 1110, ¶ 12 (9th Dist.), citing *Grayned v. Rockford*, 408 U.S. 104, 108, 92 S. Ct. 2294, 33 L. Ed. 2d 222 (1972). Courts that are interpreting statutory provisions first must examine the language that the legislative body has enacted. *Id.* When the language is clear and unambiguous,

courts must apply the legislation as written.  *In re M.M.E.W.*, 2023-Ohio-2039, 217 N.E.3d 849, ¶ 27 (4th Dist.).

{¶ **27**} In *Buddenberg v. Weisdack*, 161 Ohio St.3d 160, 2020-Ohio-3832, 161 N.E.3d 603, the Ohio Supreme Court reiterated that "when a court interprets the meaning of a statute, '[w]ords and phrases shall be read in context and construed according to the rules of grammar and common usage,' and 'the court must give effect to all of the statute's words.'"  *Id.* at ¶ 10, quoting R.C. 1.42 and *Bryan v. Hudson*, 77 Ohio St.3d 376, 380, 674 N.E.2d 678 (1997).  "'If the meaning of the statute is unambiguous and definite, it must be applied as written and no further interpretation is necessary.'"  *Buddenberg* at *id.*, quoting *State ex rel. Savarese v. Buckeye Local School Dist. Bd. of Edn.*, 74 Ohio St.3d 543, 545, 660 N.E.2d 463 (1996).  A court must consider the natural and most obvious import of a statute's language, "'without resorting to subtle and forced constructions.'" *Buddenberg* at *id.*, quoting *Lancaster v. Fairfield Cty. Budget Comm.*, 83 Ohio St.3d 242, 244, 699 N.E.2d 473 (1998).

{¶ **28**} Applying the plain meaning of the code to the facts of this case, a valid code section is required when issuing a denial for long-term care Medicaid; it is not optional or conditional upon something else, such as whether harm has been caused or realized.  The word "shall" is not conditional, it spells out what is mandated.

{¶ **29**} There is nothing conditional contained in Ohio Adm. Code 5101:6-2-03 that requires specific harm for a notice to be deemed insufficient.  Here, the notice issued to Shell does not comport with parameters Ohio has set forth to govern

the content of notice. Accordingly, the notice was not sufficient to inform Shell of the reasons her application for benefits was denied. We find that the February 3, 2022 ODJFS Notice of Action denying Shell long-term Medicaid benefits is defective, and therefore, Shell did not receive proper notice in accordance with Ohio regulations. The trial court erred in finding that the agency's interpretation of the applicable regulations was reasonable.

{¶ 30} The first assignment of error is sustained.

**Countable resources**

{¶ 31} In the second assignment of error, Shell argues that the life insurance policies are not countable resources for Medicaid eligibility purposes.

{¶ 32} Under the code section that was in place when Shell filed for Medicaid benefits, "resources" were defined as

> cash, funds held within a financial institution, investments, personal property, and real property an individual and/or the individual's spouse has an ownership interest in, has the legal ability to access in order to convert to cash, and is not legally prohibited from using for support and maintenance.

Former Ohio Adm.Code 5160:1-1-01(B)(72), effective Sept. 1, 2017.

{¶ 33} The gravamen of Shell's argument is that her life insurance policies were not countable resources that were available to her and should not have been the basis for her denial. For the following reasons, we agree.

{¶ 34} Under Ohio Adm.Code 5160:1-3-05.12(C), "[a] life insurance policy is a countable resource to the policy owner for medical assistance purposes if it generates a CSV." "The owner of the policy is the only individual who can receive

the proceeds under the cash surrender provisions of the policy," and it is only the CSV that counts as a resource. Ohio Adm.Code 5160:1-3-05.12(E)(2). "If the consent of another person is needed to surrender a policy for its full CSV, the policy is available as a resource after the individual has obtained the consent. The individual must make a reasonable effort to obtain consent." Ohio Adm.Code 5160:1-3-05.12(E)(3). "A life insurance policy is an available resource only when the policy is owned by the individual or person whose resources are deemed to the individual." Ohio Adm.Code 5160:1-3-05.12(E)(3).

{¶ 35} "The resources of an applicant are those available to [the applicant] when a Medicaid application is filed." *Martin v. Ohio Dept. of Human Servs.*, 122 Ohio App.3d 679, 681, 702 N.E.2d 915 (2d Dist.1997). Shell contends that the policy was unavailable to her because she executed an irrevocable assignment of the policies to Calhoun Funeral Home. ODJFS maintains that the policies are available to Shell, she just had to obtain Calhoun's consent to access the CSV, and moreover, there is no evidence that Shell tried to obtain Calhoun's consent to surrender the policies for their full CSV.[3]

**Reasonable efforts exclusion, Ohio Adm.Code 5160:1-3-05.1(C)(6)**

{¶ 36} Shell concedes she did not make reasonable efforts to transfer ownership of her Baltimore Life policies but contends she did make reasonable

---

[3] We are perplexed by ODJFS's argument that Shell is at fault for not attempting to obtain Calhoun Funeral Home's consent to access the CSV of the policies. Shell was not seeking to access the CSV, quite the opposite, she sought to divest herself of the policies by irrevocably assigning her rights to the policies to Calhoun.

efforts to assign the policies to Calhoun to exclude them as resources. Shell contends that assigning the policies to Calhoun is evidence of her reasonable efforts. Shell further argues whether reasonable efforts have been made is not contingent on actual transfer of ownership.

{¶ 37} In *Cowan v. Ohio Dept. of Job & Family Servs.*, 2021-Ohio-1798, 173 N.E.3d 109 (1st Dist.), the First District Court of Appeals considered the meaning of "reasonable efforts" in relation to a "legal ability to access" resources. The appellant argued that the value of two plots of land she owned should not be defined as countable resources because she could not liquidate them for want of a buyer. *Id.* at ¶ 12. The appellant maintained that without a willing buyer, she did not have "the legal ability to access in order to convert to cash." *Id.* at ¶ 14. The court disagreed, holding that the trial court correctly determined that appellant's plots of land were countable resources because the appellant "presented no legal impediment to her ability to sell [the] properties." *Id.* at ¶ 16. The court concluded that "the plain meaning of 'legal ability to access' precludes an exemption for impracticability." *Id.*; *see also Communicare v. Dept. of Job & Family Servs.*, 8th Dist. Cuyahoga No. 106874, 2019-Ohio-3757 (holding that whether the appellant was able to sell his real property had no bearing on whether the property was a countable resource).

{¶ 38} Then, in *Gardner v. Ohio Dept. of Job & Family Servs.*, 1st Dist. Hamilton No. C-210376, 2022-Ohio-3021, on which Shell relies, the First District Court of Appeals addressed the applicability of the reasonable-efforts exclusion in 42 U.S.C. 1382b(b)(2) to Ohio Medicaid law and found that "Ohio must provide for

a reasonable-efforts exclusion" relative to real property. *Id*. at ¶ 15.[4] The appellant, who was admitted to a skilled nursing facility, owned real property in West Virginia and had been attempting to sell the property prior to applying for Medicaid. The county department of job and family services rejected the appellant's application because it determined that her resources, including the real property, exceeded the $2,000 Medicaid-eligibility-resource limit. The *Gardner* Court considered current Ohio Adm.Code 5160:1-3-05.1(C)(6) (effective Apr. 1, 2022), which was not in effect at the time the appellant applied for her benefits. The court stated that "[a]lthough there was no equivalent provision in place when Gardner applied for [M]edicaid benefits, Ohio Adm.Code 5160:1-3-05.1(C)(6) expresses Ohio's chosen criteria for the reasonable-efforts exclusion * * * ." *Id*. at ¶ 41.

{¶ 39} Current Ohio Adm.Code 5160:1-3-05.1(C)(6) provides:

(6) Property that has not been sold.

(a) This provision governs real and personal property that has not been sold. When an individual owns property affecting his or her eligibility for medical assistance and the property has not been sold, it will not be counted as an available resource as long as the individual continues to list the property for sale at an amount equal to the fair market value determined by the county auditor, where available, or any other knowledgeable source.

(b) Real property that was the principal place of residence must first be considered in accordance with rule 5160:1-3-05.13 of the Administrative Code before the provisions of this paragraph are applied.

---

[4] The *Gardner* Court was persuaded by the appellant's argument that *Cowan* and *Communicare* were distinguishable because they did not address the applicability of the reasonable-efforts exclusion in 42 U.S.C. 1382b(b)(2) to Ohio Medicare law. *See id*. at ¶ 22 et seq.

(c) The inability to sell property may result from legal technicalities, general economic conditions in the community, or the inability to find a buyer. In order for property to be excluded as a countable resource, the individual has the burden of producing reliable documentation establishing one of the following:

(i) The individual may produce documentation from two different types of knowledgeable sources in the geographic area who agree that although the property is listed for sale, the property has not been sold due to an attribute of the property or the market or both.

* * *

(b) In the case of personal property, knowledgeable sources are limited to the following: any professional, business owner or operator, or expert who has experience in the sale, trade, restoration, or valuation of the type of personal property in question.

{¶ 40} The *Gardner* Court considered the reasonable-efforts exclusions in 42 U.S.C. 1382b(b)(2) and Ohio Adm.Code 5160:1-3-05.1(C)(6) and determined that "Medicaid eligibility methodology that does not include a reasonable-efforts exclusion is more restrictive than [Supplemental Security Income's ("SSI")] eligibility criteria, which means that Ohio must provide for a reasonable-efforts exclusion." *Id*. at ¶ 27.[5]

{¶ 41} 42 U.S.C. 1382b(b)(2) provides for a reasonable-efforts exclusion regarding real property, not personal property in the form of life insurance policies. Shell has not cited any similar federal regulation that offers a reasonable-efforts

---

[5] The purpose of SSI is to "insure a minimum level of income for persons who are over age 65, or blind, or disabled, [and] who do not have sufficient income and resources to maintain a standard of living at the established federal minimum income level." *Id*. at ¶ 9, quoting *Coker v. Ulch*, 166 Ohio App.3d 778, 2006-Ohio-2349, 853 N.E.2d 358, ¶ 23 (6th Dist.).

exclusion covering personal property such as life insurance policies. Thus, *Gardner* is not applicable to this case.

{¶ 42} We recognize that *Gardner*, *Cowan*, and *Communicare* addressed real property and our consideration in this case is Shell's personal property. ODJFS argues that *Gardner* is inapposite because the court held that reasonable efforts exclusion applied *only* to real property. This is incorrect. The *Gardner* Court did not consider whether the reasonable-efforts exclusion applied to personal property because real property was at issue, not personal property.

{¶ 43} The plain language of current Ohio Adm.Code 5160:1-3-05.1(C)(6) allows for the exclusion of both real and personal property, governing property that has not been sold. However, we do not consider whether the current Ohio Adm.Code 5160:1-3-05.1(C)(6) provides a reasonable-efforts exclusion for personal property in the form of life insurance policies that have not yet been sold. Shell filed for benefits in 2021, prior to the effective date of current Ohio Adm.Code 5160:1-3-05.1(C)(6).

### Ohio Adm.Code 5160:1-3-05.12(C)

{¶ 44} Our analysis does not end there, however. Former Ohio Adm.Code 5160:1-3-05.1(C), effective Sept. 1, 2017, provides that an individual is ineligible for Ohio Medicaid if the individual has an ownership interest in resources with an aggregate or total countable value that exceeds the set resource limit. "Countable resources" are the resources remaining "after all exclusions have been applied." Former Ohio Adm.Code 5160:1-3-05.1(B)(1), effective Sept. 1, 2017. The resource

limit for an individual is $2,000. Former Ohio Adm.Code 5160:1-3-05.1(B)(8)(a), effective Sept. 1, 2017.

{¶ 45} A life insurance policy is a countable resource to the policy owner if it generates a CSV. Ohio Adm.Code 5160:1-3-05.12(C). If a life insurance policy has a CSV, the agency must distinguish between the owner of the policy and the insured. Ohio Adm.Code 5160:1-3-05.12(E)(1). Because the owner of the policy is the only one who can receive the proceeds of the policy, a life insurance policy with a CSV is only a countable resource if the individual is the owner of the policy, regardless of whether the individual is also the insured. Ohio Adm.Code 5160:1-3-05.12(E)(2). If the individual is not the owner, "there is no resource available." *Id.* Additionally, "[a] life insurance policy is an available resource only when the policy is owned by the individual or person whose resources are deemed to the individual." Ohio Adm.Code 5160:1-3-05.12(E)(3).

{¶ 46} Importantly, "[i]f the consent of another person is needed to surrender a policy for its full CSV, the policy is available as a resource after the individual has obtained the consent." *Id.* If consent cannot be obtained, the policy is not considered available; however, the individual "must make a reasonable effort to obtain consent. * * * Any doubt about possible availability is resolved by contacting the insurance company." *Id.*

{¶ 47} Shell executed an "Irrevocable Assignment Agreement" with Calhoun Funeral Home, which states:

This assignment agreement is permanent. Once you sign it, you cannot change who receives your policy proceeds. You are permanently giving up many of your rights in your policy.

**{¶ 48}** ODJFS argues that the assignment was insufficient under Ohio Medicaid law to exclude the life insurance policies as resources and cites Ohio Adm.Code 5160:1-1-01(B)(5) (effective Sept. 1, 2017), which defines an "assignment" as follows:

[A]n individual eligible for medical assistance has transferred his or her right, or the rights of any other individual for whom he or she can legally make an assignment, to collect and retain third-party and/or medical support payments to [the Ohio Department of Medicaid] up to the amount of medical services paid under the medicaid program.

**{¶ 49}** The administrative code, however, does not define an assignment in the context of assigning a life insurance policy to another entity or define an "irrevocable assignment"; the definition of assignment in Ohio Adm.Code 5160:1-3-05.1(5) is not applicable to this case.

**{¶ 50}** ODJFS maintains that because Shell did not transfer *ownership* of the policies, the policies were still available to her. The state hearing officer upheld ODJFS's determination that the assignment of the insurance policies was not a permanent divestment of Shell's ownership rights and interest in the policies so as to allow the policies to be excluded when calculating her resources. The state hearing officer found that it was incumbent upon Shell to have actual ownership of the life insurance policies transferred to Calhoun — in other words, an assignment, even one that is irrevocable, is not enough. We disagree.

{¶ 51} Again, under the theory promulgated by ODJFS, and adopted by the state hearing officer, an irrevocable assignment that has been properly executed is insufficient to show that Shell has divested herself of her interest in the life insurance policies. Ohio Adm.Code 5160:1-1-01 (B)(72) defines "resources" as: cash, funds held within a financial institution, investments, personal property, and real property an individual and/or the individual's spouse has an ownership interest in, has the legal ability to access in order to convert to cash, and is not legally prohibited from using for support and maintenance.

{¶ 52} Shell signed the irrevocable assignment on November 12, 2021. Calhoun submitted, via fax, the signed irrevocable assignments to Baltimore Life on the same day. Calhoun also prepared a funeral purchase contract for Shell, which included the cash value of her three Baltimore Life insurance policies.

{¶ 53} As of November 12, 2021, Shell irrevocably assigned the three policies and their value to Calhoun Funeral Home. "If the consent of another person is needed to surrender a policy for its full CSV, the policy is available as a resource after the individual has obtained the consent." Ohio Adm.Code 5160:1-3-05.12(E)(3). If consent cannot be obtained, the policy is not considered available; however, the individual "must make a reasonable effort to obtain consent. * * * Any doubt about possible availability is resolved by contacting the insurance company." *Id.*

{¶ 54} Therefore, because Shell irrevocably assigned her life insurance policies to Calhoun Funeral Home, she would need the funeral home's consent for

the policies to be considered available. Such a request would be illogical after Shell irrevocably assigned her rights to the policies to Calhoun.

**{¶ 55}** We hold that, under Ohio Medicare law, an irrevocable assignment of a life insurance policy means that the policy is excluded as a countable resource. As of November 12, 2021, Shell's total countable resources were $5,433.77 minus $4,277.82 (the total amount of the three irrevocably assigned Baltimore Life insurance policies), which is $1,155.95, less than $1,500, and under the resource limit of $2,000.00. Therefore, Shell qualified for Medicaid, and the trial court erred when it found reliable, substantive evidence to support ODJFS's determination that Shell was ineligible for long-term Medicaid benefits.

**{¶ 56}** Shell's second assigned error is sustained.

**{¶ 57}** Judgment reversed.

It is ordered that appellant recover from appellee costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate be sent to said court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
MICHAEL JOHN RYAN, JUDGE

MARY EILEEN KILBANE, P.J., and
MARY J. BOYLE, J., CONCUR